### AQUARAMA CO. v. OLD MILL CO. et al.

(Circuit Court of Appeals, Second Circuit. April 8, 1902.)

No. 145.

PATENTS—PRELIMINARY INJUNCTION AGAINST INFRINGEMENT—PLEASURE CANALS.
   A showing in support of the validity of the Pickard patent, No. 448,072, for the construction of canals, and to establish acquiescence therein by defendants, *held* insufficient to warrant the granting of a preliminary injunction.

Appeal from the Circuit Court of the United States for the Eastern District of New York.

Appeal from an order granting an injunction pendente lite forbidding infringement of letters patent No. 448,072, granted to Arthur Pickard March 10, 1891, for the construction of canals, and the operating of a so-called amusement canal under the name of "The Old Mill," or any similar name.

R. B. McMaster, for appellants.
William H. Kenyon, for appellee.

Before WALLACE, LACOMBE, and TOWNSEND, Circuit Judges.

LACOMBE, Circuit Judge. The complainant company, a New Jersey corporation, was incorporated by George W. Scofield, Merle J. Wightman, and L. W. Thompson for the purpose of operating pleasure railroads, merry-go-rounds, and other amusement devices. The amusement canal, of which complainant alleges it has a monopoly under certain patents, consists of a single continuous canal, having

a fanciful or meandering form, its end being brought around in proximity to its beginning; two passages connecting the end of the canal with the beginning, in one of which the water-propelling wheel is located to produce a continuous current in the canal for the propulsion of boats, and in the other of which lock gates and a lock are located, by means of which boats are returned from the end to the beginning of the canal. The patent declared on was issued March 10, 1891, to Arthur Pickard, numbered 448,072. Its broadest claim is the first: "In a canal, a water-propelling wheel mounted in the canal, and adapted to produce a current for the propulsion of boats, substantially as set forth." The patent has never been adjudicated, and, upon its face, would seem to require more than the presumption arising from its issue to demonstrate patentable invention, except, perhaps, as to the more detailed claims. Three other patents, covering details of construction, are owned by the complainant,—a circumstance which has a bearing on the alleged acquiescence by the public, the taking out of licenses, etc., since it may be that some one or more of the other patents was the inducing cause to acceptance of license. Under these circumstances, it would be necessary to show some special equity as a ground for demanding an injunction in advance of final hearing; and a large part of the moving papers is devoted to an attempt to show that defendants have so conceded the validity of the patent that they should be estopped from now questioning it. No such corporation as the Old Mill Company has yet been formed, but the other defendants (except, possibly, Boshwitz) are associated in the business of constructing a pleasure canal under that name.

The history of prior transactions, as given by Scofield, Wightman, and Edward C. Boyce, a stockholder of the complainant company, is as follows: The Aquarama Company was formed in September, 1900. It acquired from Scofield an equitable interest in the patent in suit at the time of its incorporation, and in November, 1901, the legal title. Since its formation it has granted licenses for the construction of pleasure devices, including amusement canals, in various places. Some time in the spring of 1901 Scofield and Wightman made an agreement with Dangler and the Papes that the five would form a corporation to be known as the Seaside Construction Company, of which either Wightman or Scofield should be elected president, and Gustav Pape elected treasurer, and Frederick Pape manager; that all moneys derived from operating an amusement canal to be built by the Seaside Construction Company at Rocky Point, R. I., should be deposited daily in a bank, checks for withdrawals to be signed by Frederick Pape and another person to be designated by the parties; that profits were to be divided in proportion to the shares; that Scofield and Wightman were to put in $1,000 cash, and also to secure the Seaside Company an exclusive license for Rocky Point under this patent; the others were to put in $3,000 in cash, and the shares were to be divided 100 to Scofield and Wightman (50 each), and 100 to the other three; that the Seaside Company was incorporated May 31, 1901, all except Frederick Pape being named as directors for the first year, and the shares allotted as above;

that Scofield was elected president, and Gustav Pape treasurer; that on June 1, 1901, Scofield and Wightman obtained a license from the Aquarama Company to the five parties and to the Seaside Company, about to be formed, "in consideration of the sum of $2,000," of which $1,500 was actually paid by Scofield and Wightman; that under this license the canal at Rocky Point was built and operated; that Dangler and the Papes carried on the plant, and pocketed the proceeds; that during the entire season of 1901 the Seaside Company, by Pape, sent to Wightman weekly statements showing the gross receipts.

Of course, such a state of affairs would effectually estop the defendants from contesting the validity of the patent. The difficulty with the case, however, is the one usually encountered upon applications for preliminary injunctions, where the proofs before the court consist of ex parte affidavits. All the material statements in the moving affidavits are flatly contradicted in the answering affidavits. It is conceded that the Seaside Construction Company was incorporated by the five persons named, with stock allotted as stated, and that defendants built and operated the canal at Rocky Point. But it is expressly and categorically denied by the defendants that the Seaside Company ever held a meeting, or elected a president or a treasurer, or received any license from the Aquarama Company, or paid for any such license. There are cases where, despite some such conflict of affidavits, the court may yet find sufficient corroboration of the story of the moving party to induce it to issue an injunction. The certificate of incorporation of the Seaside Company tends to support the averments of the complainant, but another somewhat persuasive circumstance seems to us greatly to weaken that support. There is an absence of documentary proof such as one would expect to find marshaled in support of the moving affidavits. The alleged contract between the five persons—a written instrument—is set forth, but it is conceded that it was never signed or executed by anybody. The alleged license, also a written document, is set forth at length, but it is not signed or executed. No receipt for the money alleged to have been paid to the complainant for the license by Scofield and Wightman is produced, nor any written documents tending to show such payment. Of the dozen or more weekly returns of gross receipts at Rocky Point which Wightman says were made to him by Pape, not a single one is produced. Under these circumstances, and in view of the sharp conflict between the affiants, the questions raised should be reserved until their respective statements can be tested by cross-examination, when all doubts which now exist as to the equities will probably be eliminated.

The judge who heard the motion at circuit wrote no opinion, and we infer that his decision was in part induced by a desire to give the parties an opportunity to present the case to this court before the summer recess. It is a somewhat close question, but, upon the whole, we are of the opinion that there should be no injunction in advance of the trial.

The order is reversed.