Michele E. SHEPHERD, et al., Plaintiffs,

v.

AMERICAN BROADCASTING
COMPANIES, INC., et al.,
Defendants.

Civ. A. No. 88–0954.

United States District Court
District of Columbia.

Sept. 3, 1993.

**196**

Nkechi Taifa, Washington, DC, Mark Lane, Member of the Bar of the State of New York, Washington, DC, for plaintiff.

Robert B. McCaw, Stephen H. Sachs, John H. Pickering, Wilmer, Cutler & Pickering, Washington, DC, William H. Jeffress, Jr., Randall J. Turk, Miller, Cassidy, Larroca & Lewin, Washington, DC, for defendant American Broadcasting Companies, Inc.

Kevin Baine, Robert B. Barnett, Thomas F. Urban, II, Williams & Connolly, Washington, DC, for defendants Watson & Dyball.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

This case comes before the court on a myriad of motions, all related to the Memorandum Opinion (including Findings of Fact and Conclusions of Law) and Order this court issued in this case on April 15, 1992, 151 F.R.D. 179. In its Opinion and its Order, this court sanctioned defendants and their counsel for misconduct and entered a default judgment against defendants. Defendants have moved for this court to reconsider that Opinion and Order. Plaintiffs have submitted their proposed order of relief, and defendants have moved for discovery regarding that proposal. All motions have been briefed and are now ripe for resolution. The court grants in part and denies in part ABC's motion for reconsideration and grants in its entirety defendants Watson and Dyball's motion for reconsideration. The court also grants ABC's motion for discovery regarding plaintiffs' proposed order of relief, and holds plaintiffs' proposed order in abeyance pending completion of that discovery.

### I. FACTS.

The plaintiffs in this action are Michele Shepherd and LaRue Graves. They brought this action in the Superior Court of the District of Columbia on January 31, 1986 seeking injunctive relief and compensatory and punitive damages under the District of Columbia Human Rights Act, D.C.Code Ann. § 1–2501 et seq. They brought suit against ABC[1] (their employer), George Watson (the Washington Bureau chief), and Kenneth Dyball (their supervisor). Defendants subsequently removed the action to this court on April 8, 1988.

Plaintiffs allege that defendants engaged in various discriminatory practices in connection with plaintiffs' employment as the only two Black graphic artists in the Graphics Department of ABC News' Washington Bureau, and that defendants retaliated against plaintiffs for their participation in protected activities. The protected activity at the heart of this court's April 15 Opinion was plaintiffs' attendance at a minority employees meeting held at the ABC News Washington Bureau on October 9, 1985.

The court scheduled this case for a pretrial conference on July 24, 1989. On that date, plaintiffs filed for a temporary restraining order to prevent defendants and their counsel from altering and destroying documents and for an order to show cause why defendants and their counsel should not be held in contempt of court. Plaintiffs so moved because of information they received from a former ABC employee, Marilyn Powell, who had worked in the Washington Bureau's personnel office while the events giving rise to plaintiffs' complaint occurred. Plaintiff Graves ran into Ms. Powell at a concert, and Ms. Powell, upon learning of the upcoming trial, stated that plaintiffs' counsel could contact her if plaintiffs or their counsel thought she could be of any help. Plaintiffs' counsel contacted Ms. Powell and learned from her information that conflicted with defense counsel's representations regarding a particular document and related events. Based on their perception that defendants and/or their counsel had altered the relevant document,

---

1. The Court uses the term "ABC" collectively to refer both to defendant American Broadcasting Companies, Inc. and defendant Capital Cities/ABC, Inc.

plaintiffs moved for a temporary restraining order and a show cause order.

Instead of holding the pretrial conference on July 24, 1989, the court heard argument on plaintiffs' new motions. Based on the representations made by plaintiffs' counsel, Mr. Lane, the court issued its own subpoena for Ms. Powell and set the matter for an evidentiary hearing on July 26, 1989. The evidentiary hearing that began on July 26th lasted four days.

Based on that hearing, the court issued the findings and conclusions contained in its April 15 Opinion. In summary, that Opinion found the following: Michele Shepherd and LaRue Graves attended a minority employees meeting at the ABC News Washington Bureau on October 9, 1985. Mr. Robert Sam, who worked in the personnel department with Ms. Powell, also attended the meeting. Mr. Sam, who is Asian and a minority himself, did so at the behest and urging of his supervisor, Ms. Carol Ornes, and Ms. Ornes' supervisor, Ms. Anita Hecht, both of whom requested that he attend the meeting and report back to them with a summary of what occurred. After the meeting, Mr. Sam made notes of what happened at the meeting and who attended. Mr. Sam gave those notes to and discussed them with Ms. Ornes. From those notes, Ms. Ornes prepared a confidential memorandum describing the meeting, listing the attendees, and discussing the issues raised. Ms. Powell, who was Ms. Ornes' secretary, typed that memorandum and distinctly remembers typing Michele Shepherd's name somewhere in it. Ms. Powell remembers typing Ms. Shepherd's name because at that time Ms. Powell, who herself is Black, did not know that Ms. Shepherd was Black also. Ms. Powell clearly recollects checking Ms. Shepherd's file to confirm her race after typing the memorandum. Ms. Powell does not remember anything else about the memorandum and only remembers typing Ms. Shepherd's name be-

cause of the import of Ms. Shepherd's presence at the meeting.

Defendants produced a copy of the Ornes memorandum during discovery, but the copy produced did not contain the names of either Ms. Shepherd or Mr. Graves. Defendants were never able to locate either the original of the Ornes memorandum or the copies of the memorandum originally sent to various members of the ABC management. The court credited Ms. Powell's testimony and concluded that defendants had altered the Ornes memorandum to delete both plaintiffs' names.

During the course of the evidentiary hearing, the court also made a number of subsidiary findings. The court found that defendants and their counsel had repeatedly misled plaintiffs regarding ABC's involvement in sending Mr. Sam to the October 9th meeting. The court found this in part based on the misleading interrogatory answers and declaration defendants had supplied to plaintiffs. The court also found that defense counsel had harassed both Ms. Powell and another witness, Ms. Kristina Celich, in the course of this litigation. Based on the totality of this misconduct, the court sanctioned all defendants by entering a default judgment against them.[2]

Defendants now move the court to reconsider those findings. Defendants Watson and Dyball move separately from defendant ABC. All defendants have retained new counsel for these motions. The court addresses defendant ABC's motion first and then that of defendants Watson and Dyball. The court then addresses plaintiffs' proposed order for relief and ABC's motion for discovery regarding that proposal.

## II. *ABC'S MOTION FOR RECONSIDERATION.*[3]

ABC moves this court to reconsider each of its findings of misconduct. ABC begins by

---

**2.** Throughout this opinion, the court will cite to its April 15 Opinion by referring to its findings ("FF") or its conclusions ("CL"). In its discussion, however, the court will use the terms "find" and "conclude" interchangeably. The court will cite to the evidentiary hearing by refer-

ring to a particular day's transcript ("Tr.") and the appropriate page.

**3.** In their opposition to ABC's motion for reconsideration, plaintiffs make a series of *ad hominem* attacks on ABC and their present and past counsel instead of addressing the merits of ABC's

challenging the standard of proof this court applied in its April 15 Opinion.

■ In its April 15 Memorandum Opinion, the court reached its findings by applying the preponderance of the evidence standard. FF ¶ 3 at 3. ABC contends that the court should have applied the higher standard of "clear, unequivocal and convincing evidence." The cases ABC cites for this proposition are distinguishable, because they justify the application of this higher standard only to motions for relief from judgment based on "fraud on the court." *See* Fed.R.Civ.P. 60(b)(3).[4] Use of the clear and convincing standard is logical in that context because the party who must meet that standard is seeking to avoid a judgment already entered by the court. No such justification is readily apparent for the application of this higher standard here. As with any issue tried in a civil case, the court need only make its findings based on the preponderance of the evidence. As the court's findings then and now make clear, the evidence in this case easily meets the preponderance if not also the clear and convincing standard.

The court now addresses ABC's challenges to each of this court's findings of misconduct. The court addresses its findings in the following order: (A) document alteration and destruction, (B) witness harassment, (C) Mr. Sam's dispatch to the October 9 meeting, (D) the submission of a false declaration and false interrogatory answers, (E) suppression of evidence, (F) the merits of plaintiffs' retaliation claim, and (G) the severity of the sanction imposed. The court reconsiders and

vacates its finding that ABC removed Mr. Graves's name from the Ornes memorandum and its finding on the merits of plaintiffs' retaliation claim. The court also reconsiders and vacates its findings that ABC's counsel harassed Ms. Powell, submitted a false declaration, and attempted to suppress evidence.

### A. *Document Alteration and Destruction.*

ABC requests that this court reconsider its finding that ABC failed to preserve relevant documents and purposely altered the Ornes memorandum to remove Ms. Shepherd and Mr. Graves' names. The court has reviewed the evidence it relied upon to support that finding and concludes that it can reconsider only its finding that ABC removed Mr. Graves' name from the memorandum. The court reaffirms its finding that ABC engaged in misconduct by failing to preserve all copies of the Ornes memorandum and by knowingly and purposely altering the Ornes memorandum to remove Ms. Shepherd's name.

■ ABC had an obligation to preserve and also to not alter documents it knew or reasonably should have known were relevant to the *Shepherd* litigation if it knew the destruction or alteration of those documents would prejudice the plaintiffs. *See Dillon v. Nissan Motor Co.*, 986 F.2d 263, 267 (8th Cir.1993); *see generally* Jamie S. Gorelick *et al.*, Destruction of Evidence § 3.11 (1989 and Supp.1990) (discussing standard and each element).[5] ABC had an absolute duty to fulfill this obligation and could be held responsible

---

motion. As the court's discussion of ABC's motion for reconsideration should make clear, it in no way considered these *ad hominem* attacks in its Opinion. Because the court disregards all of the charges plaintiffs make in their opposition, the court denies ABC's motion for leave to file a supplemental reply memorandum in support of its motion for reconsideration.

Plaintiffs ground their personal attacks in a previous law suit against ABC. In that law suit the plaintiff was represented by plaintiffs' counsel in this action. In making the *ad hominem* attacks here, plaintiffs' counsel discloses information protected by a protective order still in place in that earlier case. Such conduct may be sanctionable in its own right. Had that conduct occurred *before* the court entered the default judgment, the court would have had to balance that conduct against defendants' before sanction-

ing the latter. Here, however, plaintiffs' counsel makes these allegations at the reconsideration stage and after defendants engaged in an unanswered pattern of sanctionable conduct sufficient to justify this severe sanction.

**4.** Both *Phoceene Sous–Marine v. U.S. Phosmarine*, 682 F.2d 802, 806 n. 13 (9th Cir.1982), and *Pfizer, Inc. v. International Rectifier Corporation*, 538 F.2d 180, 195 (8th Cir.1976), for example, refer to the standard of proof applied to a Rule 60(b)(3) motion.

**5.** Ms. Gorelick, now General Counsel of the Department of Defense, was then a partner in the law firm of Miller, Cassidy, Larroca & Lewin. She is also a member of this court's Committee on Grievances.

even for violations not committed in bad faith. *See Marquis v. Chrysler Corp.*, 577 F.2d 624, 642 (9th Cir.1978) (bad faith relevant only to severity of sanction). ABC's conduct violated every aspect of these standards.

■ ABC clearly knew during the earliest stages of this litigation that the Ornes memorandum was relevant if not significant to this litigation. Plaintiffs filed their complaint on January 30, 1986. Plaintiffs served their complaint on ABC one day later, January 31, 1986. Once served, ABC's in-house counsel collected those documents he thought were related to the case and forwarded them with a copy of the complaint to retained counsel; Wilmer, Cutler & Pickering. The Ornes memorandum was one of the related materials ABC immediately designated as relevant and included in that package. 5/26/92 Rosen Decl. ¶ 2. Wilmer, Cutler & Pickering received these materials, including the Ornes memorandum, on February 5, 1989, just one week after plaintiffs filed their complaint.

The Ornes memorandum clearly shows that Stephen Solomon, John Frisoli, Anita Hecht, and Calvin Ballard were its intended recipients. *See* ABC Motion for Reconsideration, Exh. A. ABC had an obligation to preserve the original and these three copies of the Ornes Memorandum as soon as they knew the document was relevant, which, as ABC's own actions demonstrate, was soon after plaintiffs filed their complaint. Jamie S. Gorelick, *supra* at § 3.11 at 93. ABC failed to do so. ABC managed to preserve only one of those copies, an accomplishment that did not satisfy its obligations.[6]

The court sanctioned ABC in part because it failed to preserve these additional copies of the Ornes memorandum. FF ¶¶ 21–25 at 10–11. ABC and their counsel knew of the relevance of the Ornes memorandum in early 1986. The events which ABC blames for its inability to find the missing copies all occurred after that time. ABC Motion for Reconsideration at 17–18. ABC's failure to preserve these copies alone constitutes sanctionable conduct.

■ ABC's failure to preserve all copies of the Ornes memorandum increases in significance when considered in connection with this court's additional finding that ABC altered that memorandum. This court previously found that Marilyn Powell's testimony, ABC's inability to justify the disappearance of the memorandum copies, and ABC's dispatch of Mr. Sam to October 9 meeting together led to the conclusion that ABC purposely altered the Ornes memorandum to remove Ms. Shepherd's name. FF ¶¶ 38 at 22–23, 47 at 27–28. The court reaffirms that finding now.[7]

As the court already has found, Ms. Powell clearly recollected typing Ms. Shepherd's name on the Ornes memorandum. FF ¶ 9 at 7. Ms. Powell remembered typing Ms. Shepherd's name on the Ornes memorandum because Ms. Shepherd's attendance at the minority employees meeting meant that Ms. Shepherd was a minority. Tr. 7/26/89 at 16–17. Ms. Powell testified that because she previously had been unaware that Ms. Shepherd was a minority, she confirmed Ms. Shepherd's race shortly after typing the memorandum. Tr. 7/26/89 at 45. Ms. Powell testified that she also recalled the Ornes memorandum because of the unusual manner in which the meeting was reported, that is, that Mr. Sam had surreptitiously reported the substance of the meeting. FF ¶ 11 at 7, Tr. 7/26/89 at 41. Those events made the inclusion of Ms. Shepherd's name in the memorandum a vivid memory in Ms. Powell's mind.

---

**6.** As any litigant knows, and certainly defense counsel knew, different copies of the same document often yield different information based on what the recipient may add through handwritten comments or other notations. Mr. Frisoli's copy of the memorandum, which ABC did find and which has additional handwritten comments, proves this point.

The court concludes that ABC managed to preserve only one of those four copies, because only the Frisoli copy can be traced back to one of those four who originally received a copy—Anita Hecht—and even that copy is not the actual copy Anita Hecht received. ABC has never explained the source of the other copies it has produced.

**7.** The court concludes that there is *no* evidence that Mr. Graves' name ever appeared on the Ornes memorandum and withdraws its finding that ABC also altered the memorandum to remove his name.

The court found Ms. Powell to be an inherently credible witness. Ms. Powell presented earnest and sincere testimony to the court. Ms. Powell did not try to overstate her recollection of events, she limited her testimony only to that memory about which she was certain: that she had typed Michele Shepherd's name on the Ornes Memorandum. FF ¶ 9–10 at 7; 7/26/89 Tr. at 16–17. Ms. Powell's demeanor and her credible explanation for why she remembered including Ms. Shepherd's name in the memorandum together convinced the court that Ms. Powell was telling the truth. For this reason, the court concluded that the Ornes memorandum originally had included Michele Shepherd's name.

Ms. Powell's testimony was not without some independent confirmation. At the time of the October 9 meeting and the evidentiary hearing, George Strait was a correspondent for the Washington Bureau. Mr. Strait, who is Black, led the October 9 minority employees meeting. After typing the Ornes memorandum, Ms. Powell, without authorization, gave Mr. Strait a copy of it. Mr. Strait's first and best recollection was that he recalled seeing Michele Shepherd's name on that memorandum. FF ¶ 12 at 7–8; Tr. 7/31/89 at 84, 101. Mr. Strait did testify that he questioned that recollection, but he also testified that he did so only because ABC's counsel had represented to him that Ms. Shepherd's name did not appear on the memorandum; FF ¶ 12 at 7–8; Tr. 7/31/89 at 84, 89; see FF ¶ 17 at 9.[8]

Ms. Powell and Mr. Strait's testimony provided the foundation for the court's finding of document alteration.[9] FF ¶ 38 at 22–23. ABC begins its challenge of this finding, then, by attacking Ms. Powell and Mr. Strait's recollection of events. ABC first argues that Ms. Powell could not have been able to recall typing Ms. Shepherd's name because she was unable to recall other events surrounding the Ornes memorandum. Ms. Powell admitted that she was unable to remember reading the memorandum after printing it, where in the memorandum Ms. Shepherd's name appeared, how many times she printed the document from her typewriter, whether the document bore a "confidential" legend, or how many copies she made of the memorandum. ABC argues that Ms. Powell's inability to recall these events weakens her testimony regarding what she could recall. The court disagrees. As already explained, Ms. Powell gave a credible explanation for her singular recollection regarding the Ornes memorandum. Ms. Powell also candidly conceded her inability to recall other details. The court is convinced that Ms. Powell truly did remember including Ms. Shepherd's name in the memorandum even though she could remember little else about that document.

ABC next tries to portray the Powell and Strait testimony as being in conflict. The alleged conflict surrounds Ms. Powell's illicit transmission of the memorandum to Mr. Strait. Ms. Powell testified that she gave Mr. Strait a "trash copy" of the memorandum that "wasn't finalized." Tr. 7/26/89 at 46–48. ABC contends that that testimony conflicts with Mr. Strait's testimony, because he testified that the memorandum he saw had Ms. Ornes' initials on it. Tr. 7/31/89 at 119.[10] While the testimony could be in conflict, that is not necessarily the case. Ms. Powell could have given Mr. Strait a copy of the memorandum from Ms. Ornes' trash can, Tr. 7/26/89 at 46, which could have been initialed by Ms. Ornes even though she had discarded it.[11]

ABC also contends that Ms. Powell's testimony was internally inconsistent. Ms. Powell testified that she typed the Ornes memorandum on the morning of October 10, 1985, the day after the employees meeting. Tr.

8. ABC counsel never told Mr. Strait of Ms. Powell's claim that she had included and seen Ms. Shepherd's name in the memorandum. Tr. 7/31/89 at 90.

9. The court rested its finding of document alteration on other facts as well. See infra at 203–204.

10. Mr. Strait was not sure whether or not the copy he saw had been discarded. Tr. 7/31/89 at 81.

11. ABC presented no testimony from Ms. Ornes regarding her practice of initialling documents or whether she had ever thrown away an initialed copy of a memorandum.

7/26/89 at 33. ABC contends that this was impossible because Ms. Powell's personnel records show she was absent from work on the morning of October 10, 1985. This inconsistency is not so significant as to undercut this court's firm confidence in Ms. Powell's otherwise consistent testimony.[12]

ABC's next attempts to discredit Ms. Powell's testimony by offering an alternative hypothesis for her recollection of the way in which she discovered Ms. Shepherd's race. ABC theorizes that Ms. Powell learned of Ms. Shepherd's race not from the Ornes *memorandum*, but from the *agenda* for the October 9 employees meeting, which listed Ms. Shepherd's grievance as a topic of discussion and which ABC contends Ms. Powell typed. ABC bases this hypothesis on Mr. Strait's testimony. ABC cites to Mr. Strait's testimony that he thought it was most probable that Ms. Powell typed the October 9 meeting agenda. Tr. 7/31/89 at 79, 91. ABC fails to cite to the following page of the transcript, however, where Mr. Strait continues on to testify that Denise Bailey also could have typed the agenda. Tr. 7/31/89 at 79–80. Mr. Strait testified that Loretta Marbury could have typed the agenda as well. Tr. 7/31/89 at 97.

ABC claims that Ms. Powell's secretarial skills and interest in minority employee matters support its theory that she typed the agenda and learned Ms. Shepherd's race in that way. While Ms. Powell undoubtedly had the requisite skill to have typed the agenda, there is no evidence in the record that she ever used those skills to help out with any minority employee meetings or matters. The evidence in the record demonstrates just the opposite. Ms. Powell testified that even though she did start attending the minority employee meetings at some

point, she still did not become "involved in minority matters," Tr. 7/26/89 at 45, and that she had to be careful not to be put into a position to be "used" because of her position in personnel. Tr. 7/26/89 at 42. Mr. Strait also testified that Ms. Powell was not actively involved in minority organizing efforts. Tr. 7/31/89 at 80; *see* FF ¶ 15 at 9.[13]

The evidence in fact suggests that Denise Bailey typed the agenda. Denise Bailey could have typed the agenda because she was active in minority affairs and also had typed documents regarding minority matters. The minutes of the February 27, 1986 minority advisory board meeting, for example, show Ms. Bailey, and not Ms. Powell, as being in attendance. Tr. 7/31/89 at 96–97. The minutes also show that Ms. Bailey was appointed recording secretary at the meeting and that she took and typed the minutes of the meeting herself. Tr. 7/31/89 at 97. The minutes of the April 22, 1986 minority employees board meeting again show that Ms. Powell was not present, but that Ms. Bailey was and that she again recorded and typed the meeting minutes. Tr. 7/31/89 at 98–99. No similar evidence exists to show that Ms. Powell ever typed a document regarding minority matters.[14]

ABC next tries to rebut Ms. Powell and Mr. Strait's testimony with that of other witnesses. ABC relies on the testimony of Anita Hecht and the declaration of John Frisoli (dated 7/25/89) to do so. Ms. Hecht testified that she received a photocopy of the Ornes memorandum through interoffice mail. She also testified that she date-stamped that copy October 11, 1985. Ms. Hecht stated that she made a photocopy of her date-stamped photocopy and transmitted the former to her supervisor, John Frisoli, despite

---

**12.** The court also notes that Ms. Powell was not unwaveringly certain about the time during which she typed the Ornes memorandum. Ms. Powell testified that she "wouldn't say the time of day" she typed the document, "but it was done in the morning." Tr. 7/26/89 at 33.

**13.** ABC alternatively contends that Ms. Powell could have learned of Ms. Shepherd's race through her own attendance of a minority employees meeting at which Ms. Shepherd's problems were discussed. There is no evidence in the record as to when Ms. Powell started attending

minority employee meetings, or that Ms. Shepherd's problems were discussed at those meetings most probably attended by Ms. Powell. This theory also does not work with Ms. Powell's recollection that she learned of Ms. Shepherd's race in connection with her own typing of a document.

**14.** Mr. Strait also might have typed the agenda because he had typed a document regarding minority matters once before. Tr. 7/31/89 at 94–95.

## 202

the fact that he was supposed to receive his own photocopy of the memorandum through interoffice mail. Mr. Frisoli's declaration states that he made handwritten notes on the first page of the copy he received from Ms. Hecht ("Frisoli copy"). Those notes are contemporaneously dated and refer to events that occurred in October and November of 1985. There is no date-stamp or notes on the second page of the Frisoli copy.

Ms. Hecht found Mr. Frisoli's copy of the memorandum in his files and produced it for the evidentiary hearing. The Frisoli copy does not contain Ms. Shepherd's name. ABC seeks to use the Hecht testimony, the Frisoli declaration, and the Frisoli copy of the memorandum to prove that no alteration of the memorandum has occurred because this version, without Ms. Shepherd's name, can be dated back to late October 1985 based on the date-stamp and notes.

The court concedes that Anita Hecht's testimony and the Frisoli declaration prove Mr. Frisoli acted upon a *photocopy* of a *photocopy* of the *first* page of a version of the Ornes memorandum date-stamped (somewhat illegibly) October 11, 1985 and that that version does not refer to Michele Shepherd. The court also concedes that the handwritten comments in the margins of the first page of the Frisoli copy were written by Mr. Frisoli and coincide with events that occurred during late October and November 1985. These concessions do not, however, require this court to reconsider its conclusion that the

Ornes memorandum has been altered or that it has been altered recently.[15]

The Frisoli document's import is quite limited. It is a third generation copy of the Ornes memorandum, it does not have an original, inked date-stamp, and the markings that date it back to late October 1985 are isolated to its first page.[16] Given these limitations, the Frisoli copy hardly proves that the original of the Ornes memorandum did not contain Ms. Shepherd's name or that that memorandum was not altered subsequently or even recently. There is no reason, for example, why the second page of the memorandum, if that was where Ms. Shepherd's name appeared, could not have been manufactured upon production and appended to the more verifiable first page. For these reasons, the court holds fast to its findings that ABC altered the Ornes memorandum.[17]

ABC finally contends that the court was unjustified in finding document alteration because it did not first find that all of the acts that must have preceded the actual document alteration also had occurred. *See* ABC Motion for Reconsideration at 4–6. ABC contends, for example, that the court should not have found document alteration without first finding that someone had obtained all copies of the original memorandum and destroyed them either with the connivance of those persons who received these copies or by surreptitiously rifling their files. The court had no obligation to find such facts before entering its finding of document alteration.

15. ABC contends that the Frisoli copy of the Ornes memorandum must be considered by the court as evidence of the original memorandum's contents, because Ms. Hecht conducted a reasonable and diligent search for the original but was unable to find it. For this proposition, ABC cites to *Sylvania Elec. Products v. Flanagan*, 352 F.2d 1005, 1008 (1st Cir.1965). *Sylvania* specifically limits the application of this proposition to those cases in which the original document has not been lost through the fault of the custodial party. *Id.* at 1008. This is not the case here, as ABC should have known.

16. Michele Shepherd's name could have been on either the first or second page of the memorandum. Tr. 7/26/89 at 5. Nothing in Hecht's testimony or Frisoli's Declaration prove the legitimacy of the second page of this document.

17. ABC also contends that Ms. Hecht testified that she had never seen a version of this memorandum with Ms. Shepherd's name in it. Ms. Hecht did so testify. Tr. 7/31/89 at 127. Later in her testimony, however, Ms. Hecht conceded that she had no independent recollection of the contents of this memorandum. Tr. 7/31/89 at 157. The same is true for Carol Ornes' testimony. Ms. Ornes testified that she did not recollect including Ms. Shepherd's name in the memorandum. Tr. 7/31/89 at 17. Ms. Ornes also testified that she could not remember the names of the individuals listed in the memorandum; Tr. 7/31/89 at 32, Tr. 8/1/89 at 56; and that she could not remember everything in the memorandum without looking at it. Tr. 8/1/89 at 61–62. *See also* FF ¶ 27(k) at 16 (Ornes' inability to recall other documents discredits her recollection of the Ornes memorandum).

The court had only to find by a preponderance of the evidence those facts sufficient to supply a presumption of document alteration to enter such a finding. Once the court did so, ABC, the party in the best position to prove exactly what happened, had the burden of exonerating itself. ABC failed to do so and the court sanctioned ABC for that reason. ABC's approach would have put plaintiffs and this court in the untenable position of having to prove facts that, because of ABC's misconduct, might have been unprovable. The court does not hold itself to a standard that has the potential for so rewarding the misconduct of a party.[18]

This court easily found enough evidence to supply a presumption of misconduct in its April 15 Opinion. In addition to the testimony of Ms. Powell and Mr. Strait, as summarized above, the court also found other facts to support this presumption. For example, the court found that although Ms. Ornes claimed she did not know of Ms. Shepherd's attendance at the meeting or of Ms. Shepherd's complaints which were discussed at the meeting, shortly after the meeting Ms. Ornes discussed Ms. Shepherd's grievances with Ms. Shepherd's supervisor and ABC's counsel. *See* FF ¶¶ 27(*l*)–(s), 28. The court also found that Mr. Sam, who reported the meeting back to Ms. Ornes, probably reported back to Ms. Ornes Ms. Shepherd's attendance and the discussion of Ms. Shepherd's grievances at the meeting. *See* FF ¶¶ 35–37. The court's April 15 Opinion further substantiates this court's finding of document alteration.

The court did not rely just upon factual evidence to support its finding of misconduct. The court also did so because of the general demeanor and presence of the ABC witnesses. During the evidentiary hearing, the court was confronted with witnesses offered by ABC who were inherently incredible. Ms. Ornes, Ms. Hecht, and Mr. Sam all presented evasive, highly crafted testimony. *See, e.g.* Tr. 8/1/89 at 5–29 (Ornes unable to confirm interrogatory answers which she provided); Tr. 7/31/89 at 141 (Hecht contends that she did not want "information" about the October 9 meeting, only "feedback" regarding minority concerns); Tr. 8/1/89 at 183–84 (Sam contends that there is no distinction between his testimony that he could not remember the October 9 meeting at all and his declaration which states that the Shepherd matter was not discussed at that meeting). This unreliable testimony only buttressed what this court found to be an inevitable conclusion: that given Powell and Strait's testimony and the available evidence, ABC must have altered the Ornes memorandum.

ABC has been unable to disprove this conclusion, in part due to its own errors. ABC failed to preserve the copies of the Ornes memorandum that could prove its innocence. The court finds that itself constituted sanctionable conduct because ABC had an obligation to preserve those documents once it knew in early February 1986 that they were relevant. With no credible evidence to the contrary, the court concludes that ABC purposely altered the Ornes memorandum to remove Michele Shepherd's name. Neither the court nor ABC has been able to supply any alternative explanation. Except for the limited instances outlined above, the court denies ABC's motion for reconsideration of this court's conclusion that ABC altered the Ornes memorandum.

### B. *Witness Harassment.*

■ In its April 15 Memorandum Opinion, the court found that ABC had impeded the judicial process by harassing two witnesses: Marilyn Powell and Kristina Celich. CL ¶ 6 at 31. ABC moves the court to reconsider this finding because it contends that the court possessed neither the legal nor the

---

**18.** Many of the facts ABC contends the court had to have found, the court did in fact find, if only by implication. Here the court has taken the opportunity to make those findings explicit. For example, the court has explained why Ms. Hecht and Ms. Ornes' testimony did not prevent a finding of document alteration, *compare* ABC Motion for Reconsideration at 5 with *supra* 201–02, why Carol Ornes did not necessarily have to have initialed the falsified document, *compare* ABC Motion for Reconsideration at 5 with supra note 16 (second page could have been altered), and why the copy of the date-stamped memorandum with Mr. Frisoli's notes on the first page does not disprove that the original Ornes memorandum contained Ms. Shepherd's name, *compare* ABC Motion for Reconsideration at 5–6 with *supra* at 201–02.

factual basis for that conclusion. The court reconsiders and vacates its conclusion only as to ABC's treatment of Marilyn Powell.

ABC and its counsel contend that the legal standard governing this issue is found in 18 U.S.C. § 1514(c). That statute defines witness harassment as "a course of conduct directed at a specific person that—(A) causes substantial emotional distress in such person; and (B) serves no legitimate purpose...." ABC argues that its actions in this case hardly rise to this type of conduct. The court finds that this statute overly limits the circumstances in which a party and especially their counsel can be sanctioned for witness harassment.

Section 1514 provides for those circumstances in which a *government* attorney may make an *ex parte* request for a *temporary restraining order* to prevent the harassment of a witness in *criminal* as well as civil matters involving the federal government. *See* 18 U.S.C. § 1514(a)(1)–(2). It has as its purpose the prevention of such acts as Mafia intimidation of government witnesses. The statute's limited scope assures that the federal government does not abuse its ability to obtain the ex parte injunctive relief authorized.

ABC and its counsel can hardly claim that this is the standard that should govern their conduct. This is especially true for ABC's counsel who, as officers of the court, are held to higher standards in their treatment of adverse witnesses. ABC's counsel, who are the perpetrators of the harassment at issue, must conform their conduct not to the standards governing Mafia enforcers but to the higher norms of the legal profession.

The court can only hope ABC advanced this definition of witness harassment because it could find no other in the law. The court has conducted its own search of the law as well and has been unable to find any other legal standards governing this type of conduct. The court's search of the relevant ethical codes, however, has provided some guidance. The American Bar Association's Model Rule of Professional Conduct 4.4 states that "[i]n representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person." *See* Rena A. Gorlin, Codes of Professional Responsibility 373 (2d ed. 1990). The explanatory comment to that rule states that a lawyer's responsibility to his client "does not imply that a lawyer may disregard the rights of third persons." *Id.* The American College of Trial Lawyers' Code of Trial Conduct likewise states that a "lawyer should never be unfair or abusive or inconsiderate to adverse witnesses or opposing litigants...." *Id.* at 394.

■ With these norms as a guide, the court turns to its previous conclusions regarding Marilyn Powell and Kristina Celich. The court concludes that it must reconsider and vacate its conclusion that ABC and its counsel harassed Ms. Powell, because there was no testimony from Ms. Powell herself that ABC and its counsel harassed or intimidated her. The only evidence of harassment came from plaintiffs' counsel, Mr. Lane, who suggested that harassment had occurred based on his conversations with Ms. Powell. When Mr. Lane questioned Ms. Powell regarding this, however, she would not state that ABC and its counsel had engaged in any misconduct. Tr. 7/26/89 at 11–12.

■ In stark contrast is ABC counsel's treatment of Ms. Kristina Celich, an ABC employee. The court found in its April 15 Opinion that Mr. Hut, ABC's counsel, harassed Ms. Celich by confronting her in front of co-workers about information she might know about this case. FF ¶ 40 at 24. The court upholds that finding now.

Ms. Celich supplied the court with a very strongly worded affidavit in which she described what this court determines was witness harassment by Mr. Hut, ABC's counsel. In her affidavit, Ms. Celich describes how counsel (David Donovan) for ABC contacted her by telephone three different times and requested to speak with her regarding this case. Each time, Ms. Celich "firmly informed" counsel that she did not wish to talk to him. 7/26/89 Celich Aff. at ¶ 2. Nevertheless, 15 months later, Mr. Hut, while at ABC to speak with other witnesses, contacted Ms. Celich at her workplace in front of her co-workers and requested an interview. Even though she was eating her lunch at the time,

Ms. Celich states that Mr. Hut "kept after [her] persistently about talking to him about the case [and that she] felt uncomfortable and cornered." *Id.* at ¶ 3. She states that she agreed to an interview after lunch just to get rid of him. *Id.* At the later interview, Ms. Celich states that she told Mr. Hut that she did not "appreciate him putting [her] on the spot in front of [her] co-workers ... [and] that [she] did not want him harassing [her] anymore." *Id.* at ¶ 4. Ms. Celich also states that after she told Mr. Hut that she did not want to speak to him, he told that her "testimony would not be able to stand up in court." 7/24/89 Celich Aff. at ¶ 4.

ABC challenges the court's finding of harassment on two grounds. First ABC contends that Mr. Hut's own declaration refutes Ms. Celich's version of events, and that this court could not have made its findings based on such conflicting documentary accounts. The court does not find Mr. Hut and Ms. Celich's accounts of the events contradictory. The court upholds its finding that Mr. Hut harassed Ms. Celich because Mr. Hut's declaration sufficiently corroborates Ms. Celich's version of events. *Cf. Ross–Whitney Corp. v. Smith, Kline & French Lab.*, 207 F.2d 190, 198 (9th Cir.1953) (conflicting affidavits do not prevent issuance of injunctive relief if affidavits agree on basic facts); *Aquarama v. Old Mill Co.*, 115 F. 806, 808 (2d Cir.1902) ("despite some ... conflict of affidavits, the court may yet find sufficient corroboration of the story ... to induce it to issue an injunction").

In his declaration, Mr. Hut confirms that before he contacted Ms. Celich at ABC he knew that she had previously rejected Mr. Donovan's attempts to speak with her.[19] 7/26/89 Hut Decl. at ¶ 5. Mr. Hut states that he contacted Ms. Celich fifteen months later while he was at the Washington Bureau, because he thought Ms. Celich might have changed her mind, and because it is his "style" to try to talk to witnesses face-to-face

whenever possible. *Id.* at ¶ 6; Tr. 7/24/89 at 23. His declaration also confirms that they met first during Ms. Celich's lunch hour and that she arranged for them to meet once she was finished. 7/26/89 Hut Decl. at ¶ 7. Mr. Hut admits that Ms. Celich communicated her unwillingness to speak with him once she met him after lunch. *Id.* at ¶ 8. In his declaration, Mr. Hut states that he did not tell Ms. Celich that "her testimony would not be able to stand up in court," only that plaintiffs' evidence was "hearsay statement after hearsay statement, and that [ABC] w[as] trying to determine whether there was admissible evidence to be found." 7/26/89 Hut Decl. at ¶ 8. Mr. Hut admits that Ms. Celich may have misunderstood the point of this latter statement. 7/26/89 Hut Decl. at ¶ 8. Mr. Hut concludes his declaration by stating that Ms. Celich met with him freely and concluded their meeting freely. Hut Decl. at ¶ 9.

None of the basic facts in Mr. Hut's declaration contradict those related in Ms. Celich's affidavit. All that is different is the perception of the events and each individual's reaction to them. The court is sure that Ms. Celich met with Mr. Hut freely, but only once he confronted her in her workplace. The court is also sure that Ms. Celich concluded her meeting with Mr. Hut freely, but only once she could meet with him away from her coworkers and could again emphasize, even more firmly, her unwillingness to speak with him about this case. The court is also sure that Mr. Hut made some statement at the end of his meeting with Ms. Celich, and that that statement disturbed and frightened her. The court also concludes that it can resolve the only conflict that does exist between these two documents in favor of Ms. Celich. Mr. Hut's declaration states that "nothing I did could in any way have been understood to threaten or intimidate or coerce [Ms. Celich]." 7/26/89 Hut Decl. at

---

**19.** In his declaration, Mr. Hut states that there had been only two previous telephone calls by Mr. Donovan to Ms. Celich. He also states that in the first of those calls, Ms. Celich stated only that she wanted to "think over whether she wanted to meet with us...." 7/2/89 Hut Decl. at ¶ 5. Mr. Hut's declaration fails to explain the content of the second phone call, however. It was during that call that Ms. Celich most probably "firmly informed" ABC of her choice not to speak with them. ABC counsel's failure to contact Ms. Celich for fifteen months after that second phone call buttresses this conclusion.

¶ 9. The court concludes that this was not Mr. Hut's call to make.

Mr. Hut concedes that his behavior that day was determined by his own "personal style." Mr. Hut should have conformed his behavior to those standards that would have made Ms. Celich and not himself most comfortable. Mr. Hut knew that Ms. Celich had avoided him and his colleagues for 15 months, he knew that this case involved a workplace dispute, and he should have known that Ms. Celich might not want her co-workers to know about her involvement in this matter. He should have taken pains to avoid being "inconsiderate" or "unfair" to Ms. Celich by confronting her in front of her coworkers. He should have ensured Ms. Celich would not be "embarrassed" through his indulgence of his personal style. He should have been more sensitive, but he was not because he needed information and he wanted that information from Ms. Celich. This is precisely what the ethical guidelines cited above warn against. This court concludes that a reasonable person in Ms. Celich's position would have felt threatened and intimidated by Mr. Hut, ABC's attorney, and that Mr. Hut wrongfully approached her in front of her co-workers and forced a conversation that Ms. Celich did not want.

ABC's second approach is to argue that Mr. Hut's approach of Ms. Celich at the Washington Bureau was not improper because Ms. Celich was an ABC employee and obligated to provide information to her employer regarding this case. Even if this were true, which the court does not determine, ABC's argument does not justify the manner in which Ms. Celich was approached. Clearly, ABC could have attempted to speak with Ms. Celich again, but it should have done so in a non-threatening manner. ABC's counsel could have placed another phone call, for example. ABC's status as Ms. Celich's employer did not grant it a right to have an attorney: (1) confront her at work in front of her co-workers, (2) request an interview under circumstances in which it would be difficult for her to decline that request, and (3) upon learning of Ms. Celich's unwillingness to speak with him, make disparaging remarks regarding plaintiffs' case. This is precisely what Mr. Hut did, and that conduct is sanctionable for its disregard of Ms. Celich's interests. Accordingly, the court reconsiders and withdraws only its finding that ABC and its counsel harassed Ms. Powell.[20]

## C. ABC's Interest in Sending Mr. Sam to the October 9 Meeting.[21]

In its April 15 Memorandum Opinion, the court also found that ABC attempted to de-

---

**20.** The court found Mr. Hut's treatment of Ms. Celich especially troubling because of the nature of the underlying law suit. Employment discrimination actions are unique in that plaintiffs in those actions rarely possess direct evidence of discrimination. Such plaintiffs usually must rely on indirect evidence of discriminatory intent to prove their case. See Barbara L. Schlei & Paul Grossman, Employment Discrimination Law 1291 (2d ed. 1976). Witnesses are the main source of such evidence. Because witnesses play such a key role in these suits, the court must be especially sensitive to any attempts by defense counsel to harass a plaintiff's witnesses. This heightened need to protect witnesses in employment discrimination matters is recognized by federal statute and supplies the main justification for the statutory protection from retaliatory action provided to such witnesses.

**21.** ABC challenges all of the remaining findings on the basis that they were beyond the scope of the evidentiary hearing. ABC contends that the court should not have entered these extraneous findings because ABC was not on notice of their relevance, given the hearing was only about the Ornes memorandum, and thus was unable to

sufficiently defend itself. The court disagrees. The court entered these remaining findings because they all arose during the hearing, i.e., they all are related to the Ornes memorandum. For example, the court's finding that ABC sent Mr. Sam to the meeting relates to ABC's motive to alter the memorandum and retaliate against its attendees. The court's findings regarding ABC's declarations and interrogatory answers relate to the accuracy of those documents, which substantively addressed the events surrounding the Ornes memorandum, and the credibility of ABC's witnesses. The court's finding that ABC counsel attempted to suppress evidence relates to the memorandum because the evidence at issue, Ms. Ornes's calendar, showed that Ms. Ornes knew about Ms. Shepherd's grievances even though Ms. Shepherd's name supposedly did not appear on the memorandum. Finally, the court's finding on the merits of plaintiffs' retaliation claims related to the hearing because the basis of that claim is the Ornes memorandum itself. Each of these findings arose out of evidence and witnesses that ABC itself presented.

ceive and mislead plaintiffs about ABC's role in sending Mr. Sam to the October 9 minority employees meeting. FF ¶ 7 at 6.[22] ABC now urges the court to reconsider this finding on three bases: (1) the evidence does not support this finding, (2) ABC did not misrepresent to plaintiffs its involvement with Mr. Sam, and (3) plaintiffs did not rely on any misrepresentations ABC may have made. The court rejects each of these arguments and retains its findings.

As explained above, the court already has found the evidence supported its conclusion that ABC sent Mr. Sam to the October 9 meeting for the purpose of recording the names of those attending and the topics discussed. FF ¶¶ 3–7 at 4–6. ABC challenges this finding simply by rehashing the testimony given. ABC raises no new arguments that the court's original findings have not addressed already. The court reemphasizes, however, its finding that Mr. Sam's testimony lacked credibility, and that ABC used its power as Mr. Sam's employer to urge him to attend the minority employees meeting.

█ ABC next argues that even if it did send Mr. Sam to the October 9 meeting, it admitted those facts at the outset of litigation. ABC contends that from the beginning it has conceded that ABC executives and employees had received a report regarding Mr. Sam's account of the meeting. The court recognizes this, but notes that two important facts are absent from this account. This admission does not concede that ABC sent Mr. Sam to the meeting, or that ABC requested Mr. Sam to take notes. These facts are the most incriminating of those surrounding Mr. Sam's attendance at the October 9 meeting. Those two facts demonstrate ABC's calculated and intentional surveillance of the minority meeting and go directly to the merits of plaintiffs' claims. ABC's knowing failure to include either one of these two key facts in its representations to plaintiffs clearly distorted its role in the creation of the Ornes memorandum and constituted sanctionable conduct.[23]

ABC's final basis for challenging this finding is its argument that plaintiffs did not rely on ABC's representations about its involvement in the creation of the Ornes memorandum. In its April 15 Opinion, the court concluded both that ABC attempted to deceive plaintiffs about its dispatch of Mr. Sam to the meeting and that plaintiffs had relied upon that misrepresentation. ABC now requests the court to reconsider the latter finding. ABC contends plaintiffs could not have relied on that misrepresentation or else plaintiffs would not have moved for the temporary restraining order and order to show cause. This argument ignores the fact that

22. ABC contends that the record the court cites does not support this finding. The court relied on two citations for its finding: Tr. 7/26/89 at 12–13 and Defendants' Reply to Plaintiffs' Opposition to Defendants' Motion for Summary Judgment at 22. ABC contends that the first of these citations refers solely to Mr. Lane's argument and is irrelevant. ABC is correct. The court mistakenly cited to the 7/26/89 transcript instead of the 7/31 transcript. Pages of 12–13 of the 7/31/89 transcript contain Ms. Ornes's testimony regarding her knowledge of Mr. Sam's attendance at the October 9 meeting.

ABC also contends that the second citation is irrelevant. That citation refers to a representation made by ABC in its reply memorandum in support of its motion for summary judgment. In their opposition to that motion, plaintiffs had contended that ABC had directed Mr. Sam to attend the October 9 meeting for the purpose of reporting back the substance of what occurred. ABC represented in its reply to plaintiffs' opposition that such a contention had no basis in the record. Once the evidentiary hearing proved that plaintiffs had ample basis to make such an allegation, the court cited to ABC's reply brief as proof that ABC had purposely misled plaintiffs about ABC's role in dispatching Mr. Sam to the October 9 meeting. Now ABC contends that their reply brief did not deny plaintiffs' contention but only challenged plaintiffs' inability to offer evidence to buttress that contention. The court fails to see the distinction ABC is attempting to draw. In its reply memorandum, ABC referred to plaintiffs' contention of ABC involvement in Mr. Sam's report as a "bald" assertion based on no evidence. ABC made this representation even though it knew that it was guilty of the assertion made and that its own employees would so confess if questioned. ABC's current position demonstrates why this court has been so careful in the leeway it provides to this litigant.

23. This second fact is independent of ABC's request to Mr. Sam that he attend the meeting. Even if it were true that ABC did not ask Mr. Sam to attend the October 9 meeting, Mr. Sam still conceded that ABC asked him to take notes should he attend. Tr. 8/1/89 at 123, 127, 145, 156–57, 159, 160; 7/25/89 Sam Decl. at ¶¶ 2, 5. This fact is still significant when taken alone.

plaintiffs were able to so move only because Ms. Powell came forward. Until that time plaintiffs had to have relied upon ABC's representations. Even if plaintiffs saw through ABC's story and knew well enough not to believe it, plaintiffs' tenacity then did not excuse ABC's purposeful misrepresentations, and it does not now justify this court's reconsideration of its finding that ABC engaged in misconduct.

### D. ABC's Misleading Declaration and Interrogatory Answers.

■ The court also cited ABC and their counsel for submitting a misleading declaration and unverified interrogatory answers. In its findings and conclusions, the court noted that Mr. Sam's 7/25/89 declaration left out relevant information that Mr. Sam testified he had told counsel, FF ¶7 at 6, and that his declaration misrepresented Mr. Sam's ability to recollect Ms. Shepherd's presence at the October 9 meeting, FF ¶27b at 12–13, ¶41b at 25. The court also found that Ms. Ornes had verified interrogatory answers that either she had no knowledge of or that she contradicted through her own testimony. FF ¶¶27f–i at 14–15. The court addresses ABC's request to reconsider these two findings in turn.

This court found Mr. Sam's declaration faulty in two respects. The first concerned his recollection regarding Ms. Hecht's interest in his attendance at the October 9 meeting. Mr. Sam testified that he knew Ms. Hecht was interested in whether he was going to attend the October 9 meeting, because Ms. Ornes relayed that information to him. Tr. 8/1/89 at 149–52. Mr. Sam also testified that he told ABC counsel of Ms. Hecht's interest. Tr. 8/1/89 at 171. ABC's counsel did not include that highly relevant information in Mr. Sam's 7/25/89 declaration. That declaration reads only that "Carol Ornes, the Manager of the Personnel Department, asked me whether I planned to attend that meeting." ¶2 at 1–2.

The court also faulted ABC's counsel for phrasing Mr. Sam's declaration so that it stated that Mr. Sam recollected "there was no discussion during the meeting about Michele Shepherd or any complaint that Ms.

Shepherd had about her work schedule." ¶6 at 3. This statement conflicted with Mr. Sam's testimony just one week later. Mr. Sam testified that he had no recollection of what occurred at the meeting. Tr. 8/1/89 at 191–92. Mr. Sam also testified that he had told ABC counsel that he could not recollect what occurred at the meeting. Tr. 8/1/89 at 194.

ABC's counsel now contend that they did not have an adequate opportunity to defend against the court's findings regarding Mr. Sam's declaration. ABC's counsel state that they thought the court would consider the inconsistencies between Mr. Sam's declaration and his testimony only when assessing Mr. Sam's credibility and not when assessing counsel's conduct. If they had known the court would use that testimony against counsel themselves, ABC's counsel contend that they would have proven that Mr. Sam had not told counsel either about Ms. Hecht or that he could remember nothing about the October 9 meeting.

The court finds some validity in the distinction ABC's counsel is attempting to draw. It could have been the case that ABC counsel would have proceeded differently had they known the full import in the discrepancies between Mr. Sam's testimony and his declaration. Whether or not ABC would have been successful in confronting Mr. Sam is another question, and one that highlights what the court concludes is the true problem with Mr. Sam's declaration.

Any reading of Mr. Sam's testimony demonstrates that Mr. Sam was at the very least a highly malleable witness. As the court found, based on a number of examples, Mr. Sam testified to "please his former employer and its attorneys by accommodating his testimony to make it appear consistent with the testimony of his [former] employer." FF ¶6 at 5–6. There is no way that ABC's counsel could not have been aware of that flaw in Mr. Sam as a witness. Any experienced litigator always evaluates a potential witness for such characteristics. Here, ABC's counsel certainly knew of Mr. Sam's credibility problems and yet they submitted a declaration from him and requested that plaintiffs and the parties assume it to be true.

Just as an attorney should not submit any pleading or motions to the court without believing them to be well-grounded in law and fact, Fed.R.Civ.P. 11, so too should an attorney submit only those declarations made by witnesses who have personal knowledge and are credible. Because declarations and affidavits hold themselves out to be testimony upon which the court can rely, the court must be able to assume that the counsel submitting them have ensured their accuracy. Counsel cannot turn a blind eye to the limitations of their own witnesses when drafting such documents. Because neither the court nor the opposing party usually gets a chance to cross-examine a declarant, the attorney who submits the declaration is the sole check on the accuracy of the statements provided. When the submitting attorney has a witness with severe credibility problems unknown to the court or opposing counsel, that attorney either must decline to submit a declaration from that witness or include the impeaching information within the declaration itself. ABC's counsel did neither.

■ The court reconsiders and withdraws its finding that ABC counsel knowingly submitted a misleading declaration, because the court did not first put ABC counsel on notice that they should examine the declarant about the inconsistencies between his testimony and his declaration. The court notes, however, that ABC's counsel ran a great risk by submitting a declaration that did not reveal Mr. Sam's limitations. The court will not, however, find misconduct in ABC's submission of the Sam declaration, because the court does not have before it the proof necessary to do so. While ABC counsel should have known of Mr. Sam's credibility problems before they submitted his declaration, the court has insufficient evidence to prove that knowledge.

■ Next the court addresses ABC's answers to interrogatories. Although Ms. Ornes verified ABC's answers to the interrogatories filed by both Graves and Shepherd, Ms. Ornes testified that she could not remember signing and verifying those answers, that some answers might not be accurate, and that other answers were just plain wrong. FF ¶ 27e–j at 13–15. The court

found that this constituted misconduct, and ABC requests the court to reconsider this finding.

Fed.R.Civ.P. 33 states that "[e]ach interrogatory shall be answered separately and fully in writing under oath, ... [and] [t]he answers are to be signed by the person making them...." Without even referring to or acknowledging its obligations under this Federal Rule, ABC contends that it engaged in no misconduct by having Ms. Ornes sign its interrogatory answers even though she had no personal knowledge of the answers given. ABC instead argues that its inclusion of the following disclaimer satisfied any obligation owed:

ABC's answers are based on information obtained from those officials most likely to have relevant information, including Kenneth Dyball, George Watson, and graphic arts, personnel, labor management relations, news and administrative support officials (including persons in the payroll, business, building services, security, purchasing, and space/renovation departments). Graves Interrogatory Answers at 3, Shepherd Interrogatory Answers at 3.

That disclaimer does not excuse ABC from its obligation to comply with the Federal Rules of Civil Procedure. The disclaimer might have satisfied ABC's obligation under the Rules if those parties had also signed the answers, but they did not. The disclaimer also might have satisfied ABC's obligation if Ms. Ornes had actually confirmed the answers with the various individuals responsible for providing the information. ABC concedes that Ms. Ornes did not do that either. ABC states only that Ms. Ornes signed off on the answers because she had "been advised that a complete and diligent search ha[d] been made of those books, records, and papers of ABC reasonably likely" to contain the requested information. Graves Interrogatory Answers at 4, Shepherd Interrogatory Answers at 4. The court cannot help but wonder whether ABC has fallen victim to its own shell game and has itself lost track of who actually confirmed the truth of the interrogatory answers provided to plaintiffs.

ABC had an absolute duty to have an individual sign for and verify the answers it provided to plaintiffs' interrogatories. ABC admittedly violated that duty. ABC had Ms. Ornes sign its answers to plaintiffs' interrogatories even though she had no knowledge regarding the answers, she had not confirmed those answers with those responsible for them, and she did not know who was responsible for those answers. That is sanctionable conduct.

The court would have expected ABC to either withdraw or supplement its interrogatory responses once Ms. Ornes testified as to her inability to verify them. ABC did not do so. Instead, ABC left its admittedly incorrect discovery responses in the court's record and continued to rely upon them in its pending motion for summary judgment, which it never withdrew. ABC had over two years to update its discovery responses before the court issued its opinion sanctioning ABC. ABC's failure to do so further demonstrates its failure to respect its obligations under the Federal Rules and to this court.

ABC tries to justify its conduct by arguing that plaintiffs committed similar offenses. ABC contends that four of plaintiffs' proposed findings adopted by the court's April 15 Opinion conflict with the sworn deposition testimony of plaintiff Graves. In his deposition, Mr. Graves stated that he did not speak regarding Ms. Shepherd's grievance at the October 9 meeting and that no grievance of his own was discussed there. Plaintiffs proposed and the court adopted only two findings in conflict with that deposition testimony. *See* FF ¶ 28 at 19, ¶ 34 at 21. The court reconsiders and withdraws only the portions of those findings that conflict with Mr. Graves' testimony, but the court does not conclude that plaintiffs' submission of those proposed findings in any way excuses ABC's conduct. ABC had an obligation under the Federal Rules of Civil Procedure and it flagrantly ignored that obligation. Plaintiffs' misconduct, if any, is a topic for another day. The court will not accept ABC's argument and allow the parties' relative levels of misconduct to determine the baseline for acceptable behavior.

### E. *ABC's Counsel Attempt to Suppress Evidence.*

During Ms. Ornes testimony, plaintiffs' counsel, Mr. Lane, asked Ms. Ornes whether she had reviewed any pages from her desk calendar with ABC counsel in preparation for the evidentiary hearing. When Ms. Ornes answered in the affirmative, Mr. Lane requested that the court order ABC to produce the calendar pages reviewed. ABC's counsel objected at first, based on his fear that production of the selected calendar pages would reveal attorney work-product. ABC's counsel shortly thereafter acceded to the production of the selected pages. The court originally found that ABC counsel's initial objection to production of the calendar pages was an attempt to suppress evidence. The court now reconsiders and withdraws that finding because it concludes ABC counsel had an arguable basis for his objection in the attorney work-product privilege.

### F. *The Court's Findings on the Merits of Plaintiffs' Retaliation Claims.*

ABC's last challenge is to this court's finding against ABC on the merits of plaintiffs' retaliation claims. This court originally concluded that the evidence submitted at the evidentiary hearing proved ABC had retaliated against Ms. Shepherd and Mr. Graves for their attendance at the October 9 meeting. CL ¶ 12 at 33–34. At ABC's urging, the court reconsiders and withdraws that conclusion. The court recognizes that there is insufficient evidence to prove Ms. Shepherd's supervisor knew of her attendance and retaliated against her for that reason. The same is true for Mr. Graves, especially in light of this court's withdrawal of its previous findings that Mr. Graves vocally participated in the meeting and that his grievances were discussed there, *see supra* at 37. The court's findings of document alteration and destruction, witness harassment, and false interrogatory answers only prove ABC and their counsel engaged in general misconduct during this litigation and not that ABC retaliated against these plaintiffs for participating in a protected activity.

## G. *Severity of the Sanction Imposed.*

■ The court imposed the severe sanction of a default judgment on ABC and their counsel for their misconduct in this case. Those instances in which the court has reconsidered and withdrawn its findings of misconduct are too limited to warrant this court's reconsideration of this sanction. The court still finds that ABC and/or their counsel: (1) failed to preserve documents they knew were relevant to this litigation, (2) purposely altered the Ornes memorandum to remove Ms. Shepherd's name, (3) misrepresented ABC management's involvement in sending Mr. Sam to the October 9 meeting and in requesting that he take notes regarding that meeting, (4) harassed a witness, and (5) submitted answers to interrogatories that were unverified, inaccurate, and sometimes even false. ABC and their counsel's actions in this case still amply justify this court's imposition of a default judgment against ABC.

This is not a case where the ethical lapses have been minor or infrequent, or where ABC's conduct could be defended as "commonplace in the normal give and take of litigation." ABC's conduct struck at the very heart of the judicial process' search for truth. As the evidentiary hearing unfolded, the court learned of instance after instance in which ABC and/or their counsel obstructed plaintiffs and this court's ability to learn the facts surrounding the Ornes memorandum and plaintiffs' retaliation claims. If the court has appeared to read ABC's arguments narrowly this time around, it has done so only because of that past experience.

The court recognizes that ABC, as a national television network, has a responsibility and commitment to integrity and that its attorneys, as members of the Bar, do so as well. The court also recognizes that both ABC and its attorneys have outstanding reputations in the community. ABC and its attorneys would like the court to simply rely on these reputations and reject the possibility of wrongdoing on that basis. *See* ABC's Memorandum of Points and Authorities in Support of Motion for Reconsideration at 1-2. If the facts in this case were equivocal or ambiguous, the court might have been able to do so. The court might have been able to assume that ABC and its attorneys, as respected members of the community, would never have engaged in such misconduct. The facts are not ambiguous, however. The facts instead clearly demonstrate that ABC and its attorneys engaged in a pattern of misconduct ranging from document alteration to witness harassment. There comes a time when the parties' reputations no longer matter and only the facts do. That time has come.

■ The court recognizes that there is a judicial policy in favor of resolving disputes on the merits, and that the sanction it imposes here runs contrary to that general policy. The court also recognizes that exceptions can be made to this policy when the misconduct of a party is so egregious that a default is the only sufficient sanction. As ABC's own citations make clear, ABC's intentional alteration of the Ornes memorandum alone could justify this court's decision to enter a default judgment. Taken together, ABC's infractions amply justify the sanction imposed.[24]

## III. *WATSON AND DYBALL'S MOTION FOR RECONSIDERATION.*

■ Defendants Watson and Dyball also move this court to reconsider its findings and conclusion regarding their involvement in the misconduct already described. Because the court concludes that there was no evidence of misconduct on the part of Mr. Watson and insufficient evidence to find misconduct on the part of Mr. Dyball, the court vacates all findings of misconduct relating to these two individuals and all sanctions imposed upon them.

---

**24.** ABC contends that this court, under *Shea v. Donohoe Constr. Co.,* 795 F.2d 1071, 1078 (D.C.Cir.1986), had an obligation to put ABC on notice that it was in danger of earning a default because of attorney misconduct before it imposed that sanction. *Shea* also states that such notice is not required where the client is guilty of misconduct itself. *Id.* at 1078-79. As explained in the text, the worst violation at issue is ABC's own intentional alteration of the Ornes memorandum. That violation alone justifies the default sanction. For this reason, *Shea's* notice requirement was not applicable to this case.

Counsel for Watson and Dyball correctly point out that in its findings of misconduct, the court cited all "defendants" collectively and never made any specific finding that either Watson or Dyball was guilty of any infraction. As the court's preceding discussion of the misconduct at issue makes clear by its failure to refer to either Mr. Watson or Mr. Dyball, neither of those defendants engaged in any of the misconduct catalogued. The court's findings, then and now, refer only to ABC and their counsel.[25]

The court does not withdraw any of its previous findings, however, because none charged either of these defendants with any sanctionable conduct. Those findings that do reference these individuals only describe their testimony or attribute to them actions that were not subject to the sanctions given. See, e.g., FF ¶¶ 31–32 at 20 (discussing Dyball's knowledge of Shepherd's presence at October 9 meeting). For this same reason, the court sees no reason to adopt these defendants' supplemental proposed findings of fact and conclusions of law. The court's previous finding erroneously stated these defendants' culpability only by accusing "defendants" of misconduct. The court entered no specific findings that either Watson or Dyball was at fault. As a result, no findings need be retracted and none need be added. The court corrects its error simply by clarifying the identities of the guilty parties. The court, therefore, clarifies its findings to exclude defendants Watson and Dyball from the sphere of misconduct, vacates the default judgment entered against them, and directs the clerk of court to file these defendants' verified answers.

## IV. PLAINTIFFS' PROPOSED ORDER OF RELIEF AND ABC'S REQUEST FOR DISCOVERY.

In their proposed order of relief, both plaintiffs request compensatory damages for the emotional pain they suffered because of ABC's actions. Plaintiff LaRue Graves also requests damages for the income he lost after ABC discharged him. ABC moves for discovery on both of these claims. ABC requests mental examinations of both plaintiffs under Fed.R.Civ.P. 35 and discovery regarding Mr. Graves' lost income claim. The court concludes that it must grant both requests.

 This court's entry of default judgment against ABC does not extinguish ABC's right to challenge the award requested by plaintiffs. Before it can exercise that right, ABC contends that it needs discovery regarding some of plaintiffs' damage claims. This is understandable here, because Ms. Shepherd and Mr. Graves each request close to $2 million in compensatory damages. The court grants ABC's request because it has demonstrated the need and appropriateness for the requested discovery.

Under Fed.R.Civ.P. 35(a), the court may order plaintiffs to submit to a mental examination if their mental condition is in controversy and if ABC shows good cause for such an examination. ABC has satisfied both requirements. Both plaintiffs have placed their mental conditions in controversy by demanding damages to compensate them for emotional distress. See Plaintiffs' Proposed Order For Relief at 2–4. Both plaintiffs submitted affidavits that describe at great length the emotional distress each claims to have suffered because of ABC's actions. Shepherd Aff. at ¶¶ 11–15, 22–33; Graves Aff. at 18, 22, 33. Plaintiff Shepherd also has seen Dr. Willie T. Hamlin, M.D. about her claimed emotional problems, and she has offered the full text of his deposition as support for her claim that she suffers from Post–Traumatic Stress Disorder/Syndrome because of her experiences at ABC. By these actions, plaintiffs have placed the existence and extent of their alleged mental injuries in controversy. See Vinson v. Superior Court, 43 Cal.3d 833, 239 Cal.Rptr. 292, 297,

---

**25.** Counsel for Mr. Watson and Mr. Dyball filed an extensive memorandum in support of their motion. That memorandum, out of an abundance of caution, detailed why neither Mr. Watson nor Mr. Dyball was responsible for the misconduct found by the court. That memorandum demonstrates quite clearly that these two defendants are innocent of the misconduct charged. The court does not address the specifics of that memorandum, because it finds that its own description of the misconduct in this Memorandum Opinion demonstrates that these two defendants were not involved the sanctionable conduct.

740 P.2d 404, 409 (1987); *Lowe v. Philadelphia Newspapers,* 101 F.R.D. 296, 298–99 (E.D.Pa.1983); *Brandenberg v. El Al Israel Airlines,* 79 F.R.D. 543, 546 (S.D.N.Y.1978).

ABC also has shown good cause for the mental examination of plaintiffs. Ms. Shepherd has retained Dr. Hamlin to evaluate her emotional claims and she has submitted his deposition in support of those claims. The court cannot fault ABC for wishing to have its own expert evaluate Ms. Shepherd. Ms. Shepherd also has strongly emphasized the severity of her emotional problems, so much so that the gravity of her mental distress seems central to her overall damage claim. The importance of Ms. Shepherd's emotional injuries and the way in which she has chosen to prove them all provide ABC with good cause to request their own mental evaluation of Ms. Shepherd.

ABC also has shown good cause for a mental evaluation of Mr. Graves. Mr. Graves too has substantial claims of emotional injury. Mr. Graves substantiates his claims of mental suffering simply by contending that he believes he has been injured in the same way as Ms. Shepherd. Mr. Graves contends that after many discussions with Ms. Shepherd he is convinced that he has her same symptoms and deserves similar damages. Graves aff. at ¶ 23. ABC understandably has some questions about Mr. Graves' emotional injuries. Mr. Graves' attempt at piggy-backing his claims of emotional injury onto those of Ms. Shepherd provides good cause for a court-ordered mental examination of Mr. Graves.[26]

ABC also has requested further discovery regarding Mr. Graves' claim of lost income. Mr. Graves claims that because of ABC's actions he lost $200,000 in income from 1986 to the present. Plaintiffs' Proposed Order for Relief at 3. ABC requests further discovery regarding this damage claim because Mr. Graves so far has produced little information regarding the income he received during that period and his attempts at mitigating the income lost. When ABC first filed its motion for discovery, Mr. Graves produced W–2 forms only for the years 1990 and 1991 and two letters to demonstrate his attempts at seeking other employment. ABC's present motion then precipitated Mr. Graves' production of more documentation: two additional W–2 statements, one tax return, some information regarding unemployment benefits received, and information regarding a lottery prize won. ABC legitimately raises the concern that Mr. Graves' late production of this income documentation raises even more questions and suggests that full-scale discovery of the income issue would be justified. The court agrees.

The court grants ABC's motion for mental examinations of Ms. Shepherd and Mr. Graves as well as ABC's motion for discovery regarding Mr. Graves' lost income claim. The court postpones its decision on plaintiffs' proposed order of relief until these discovery matters are concluded and ABC has had an opportunity to submit a supplemental opposition to plaintiffs' damage request.

## V. *CONCLUSION.*

The court has not disregarded defendants' claims that some of this court's previous findings were unjustified. The court has withdrawn its findings that ABC altered the Ornes memorandum to remove Mr. Graves' name and retaliated against plaintiffs for their attendance at the October 9 meeting. The court also has withdrawn its finding that ABC's counsel harassed Marilyn Powell, drafted a false declaration for Mr. Sam, and attempted to suppress evidence. Finally, the court clarified its findings to exonerate defendants Watson and Dyball from any wrongdoing.

The court remains steadfast on its other findings of misconduct. After the court's exhaustive and meticulous reexamination of the record, it can only conclude that ABC did in fact alter the Ornes memorandum to remove Ms. Shepherd's name, send Mr. Sam to the October 9 minority employees meeting

---

**26.** The court notes that plaintiffs' counsel did little to oppose ABC's request for mental examinations. Plaintiffs' memorandum in opposition to ABC's request focused solely on the lateness of ABC's request for such evaluations. Fed.R.Civ.P. 35(a) places no time limit on a party's request for mental examinations, and ABC rightly moved for such examinations once plaintiffs claimed damages for emotional suffering in their proposed order for relief.

for the purposes of reporting what occurred, and disregard its obligation to verify its answers to plaintiffs' interrogatories. The court also must adhere to its conclusion that ABC's counsel harassed Kristina Celich.

This court does not lightly impose the sanction of a default judgment. It has done so here because of the severity of the breaches found. The misconduct which the court finds ABC and its counsel to have committed amply justifies that sanction. An accompanying Order to this effect shall issue this date.

## ORDER

This case comes before the court on a myriad of motions, all related to the Memorandum Opinion (including Findings of Fact and Conclusions of Law) and Order this court issued in this case on April 15, 1992, 151 F.R.D. 179. In that Opinion and Order, this court sanctioned defendants and their counsel for misconduct and entered a default judgment against defendants. Defendants and their counsel have moved for this court to reconsider that Opinion and Order. Plaintiffs have submitted their proposed order of relief, and defendants have moved for discovery regarding that proposal. All motions have been briefed and are now ripe for resolution. For the reasons stated in the accompanying Memorandum Opinion issued this date, it is hereby ORDERED that:

1. The court GRANTS in part and DENIES in part ABC, Inc. and Capital Cities/ABC, Inc.'s ("ABC") motion for reconsideration. The court reconsiders and vacates only its findings that: (1) ABC altered the Ornes memorandum by deleting plaintiff Graves' name, (2) ABC's counsel harassed witness Marilyn Powell, (3) ABC's counsel drafted a false declaration for witness Robert Sam, (4) ABC's counsel attempted to suppress evidence, and that (5) ABC in fact retaliated against plaintiffs for their attendance at the October 9, 1985 minority employees meeting. Accordingly, the court's April 15 Findings of Fact ("FF") and Conclusions of Law ("CL") shall be changed in the following manner:

a. In FF ¶ 4, line 4, the transcript cite shall be to 7–31–89 and not 7–26–89.

b. In FF ¶ 7, lines 9–10, the phrase "but the attorneys ... the court" shall be deleted and a period shall be placed after the word "meeting" on line 9.

c. In FF ¶ 26, all but the first sentence shall be deleted. After that first sentence, the court substitutes the following language: "This document only demonstrates that Mr. Frisoli acted upon a *photocopy* of a *photocopy* of the *first* page of a version of the Ornes memorandum that is date-stamped (somewhat illegibly) October 11, 1985 and does not contain Ms. Shepherd's name. Because of these limitations, this copy of the Ornes memorandum in no way proves that the original of this memorandum did not contain Ms. Shepherd's name."

d. In FF ¶ 27b, the first sentence shall be changed to read, "In his sworn declaration, Mr. Sam stated "(t)o the best of my recollection . . . ."

e. In FF ¶ 28, lines 2–5 shall be changed to read "where the subject of Ms. Shepherd's grievance in the Graphics Department was raised; where that subject was one of the most important agenda items," and in line 6 the phrase "where those subjects were addressed by Graves at the meeting;" shall be deleted.

f. In FF ¶ 34, lines 10–13 shall be changed to read "Strait told Watson about the grievance of Shepherd, since, ... was more important that the grievance of Shepherd, and no matter . . . ."

g. In FF ¶ 38, line 9, the sentence ending on that line shall end with "Ms. Shepherd's complaint" instead of "their complaints."

h. FF ¶ 39 shall be deleted.

i. In FF ¶ 41(a), all findings after the sentence ending with "signature" on line 5 shall be deleted.

j. In FF ¶ 41(b), the last sentence shall be deleted.

k. FF ¶ 42 shall be deleted.

l. CL ¶ 12 shall be deleted.

The court DENIES ABC's motion to reconsider and change any other findings or conclusions in the court's April 15, 1992 Memorandum Opinion and Order.

2. The court DENIES ABC's motion for leave to file a supplemental reply memorandum in support of its motion for reconsideration.

3. The court GRANTS defendants Watson and Dyball's motion for reconsideration and VACATES the default entered against them. Accordingly, the court clarifies its April 15, 1992 Memorandum Opinion in the following manner:

 a. Any findings of misconduct referring to "defendants" collectively shall be interpreted to refer only to ABC and/or ABC's counsel.

 b. CL ¶ 13 shall be changed to read "The Court grants plaintiffs' claims for the entry of default judgment in plaintiffs' favor on all claims against ABC."

The court directs the Clerk to file the verified answers of defendants Watson and Dyball.

4. The court GRANTS ABC's motion to compel mental examinations of plaintiffs and for limited discovery regarding plaintiff Graves' lost income damage claim. The court shall hold plaintiffs' proposed order for relief in abeyance until such discovery is completed. Accordingly it is ORDERED that:

 a. Plaintiff Michele Shepherd shall undergo a psychiatric examination by Arthur S. Blank, M.D., of not more than five hours on a date agreed upon by counsel or set by the court.

 b. Plaintiff LaRue Graves shall undergo a psychiatric examination by Arthur S. Blank, M.D. of not more than five hours on a date agreed upon by counsel or set by the court.

 c. Plaintiff LaRue Graves shall produce on or before October 1, 1993 all documents in his possession, custody, or control responsive to defendants' February 21, 1986 First Request for Production of Documents No. 19.

 d. Plaintiff LaRue Graves shall make himself available for a deposition beginning on a date agreed upon by counsel or set by the court.

 e. The psychiatric examinations of plaintiffs and the deposition of plaintiff Graves shall be completed by November 1, 1993.

 f. Defendant ABC shall file the reports of the psychiatric examinations, and a supplemental memorandum regarding plaintiffs' proposed order for relief no later than December 1, 1993.

 g. Plaintiff shall file a final proposed order for relief and any supplemental supporting memorandum by December 17, 1993.

SO ORDERED.