EDMUND A. SARGUS, JR. CHIEF UNITED STATES DISTRICT JUDGE
Defendant's Motion to Permit Rule 35 Medical Examination
This matter is before the Court on Defendant's Motion to Permit the Rule 35 Medical Examination of Plaintiff Angela Swartz ("Def's Mot. for IME") (ECF No. 19 ), Plaintiff's Memorandum in Opposition (ECF No. 20 ), and Defendant's Reply (ECF No. 21 ). For the reasons that follow, the Court DENIES Defendant's Motion.
I.
Plaintiff Angela Swartz brings this "civil action for equitable relief, compensatory and punitive damages, costs incurred and to be incurred by Plaintiffs, and any other damages which the Court or jury may deem appropriate for bodily injury and property damage arising from the intentional, knowing, reckless and negligent acts and omissions of the Defendants in connection with contamination of human drinking water supplies used by Plaintiff Angela Swartz." (Am. Compl. ¶ 1, ECF No. 15.) DuPont does not dispute that for decades it released into the water around its Washington Works plant a synthetic perfluorinated carboxylic acid and fluorosurfactant also known as perfluorooctoanoic acid or ammonium perfluorooctanoate ("C-8"). Mrs. Swartz alleges that the C-8 released from DuPont's Washington Works Plant caused her to develop kidney cancer. Under a contractual agreement between DuPont and a group of individuals who drank water contaminated with C-8, DuPont agreed not to contest whether C-8 is capable of causing Mrs. Swartz's kidney cancer (i.e. , general causation), and retained the right to contest whether C-8 actually caused her cancer (i.e. , specific causation).
*671 Mrs. Swartz alleges that the C-8 "[r]eleases have made and/or continue to make Plaintiff and other exposed individuals physically ill and otherwise physically harmed, and/or have caused and continue to cause associated emotional and mental stress, anxiety, and fear of current and future illnesses, including but not limited to, fear of significantly increased risk of cancer and other disease, among Plaintiffs and the other class members." (Am. Compl. ¶ 52, ECF No. 15.) Mrs. Swartz brings claims for relief for negligence, malicious/reckless indifference, and loss of consortium. As damages for her negligence claim, she requests:
a. Medical and hospital bills treatment of injuries;
b. Physical injury, both temporary and permanent;
c. Economic damages;
d. Severe and significant emotional distress and mental pain and suffering;
e. Humiliation, embarrassment and fear;
f. Loss of enjoyment of life;
g. Annoyance and inconvenience; and
h. Other damages, which, under the law and circumstances, Plaintiffs are entitled to recover, including attorneys' fees and costs associated with the prosecution of this action.
Id. ¶ 62.
Mrs. Swartz's trial will be the fifth held in this MDL, and the first Post-Settlement[1] trial. The plaintiffs in the other four trials made the same claims, based on the same theories of liability, and asked for the exact same damages and relief. See e.g., Freeman v. E.I. du Pont de Nemours and Company, Case No. Case No. 2:13-cv-1103, ECF No. 40, Am. Compl., ¶ 57: Compensatory damages for negligence of "a. Medical and hospital bills for treatment of injuries; b. Physical injury, both temporary and permanent; c. Economic damages; d. Severe and significant emotional distress and mental pain and suffering; e. Humiliation, embarrassment and fear; f. Loss of enjoyment of life; g. Annoyance and inconvenience; and h. Other damages, which, under the law and circumstances, Plaintiffs are entitled to recover, including attorneys' fees and costs associated with the prosecution of this action"); Vigneron v. E.I. du Pont de Nemours and Company, Case No. Case No. 2:13-cv-136, ECF No. 73, Am. Compl., ¶ 73: Compensatory damages for negligence of "a. Medical and hospital bills for treatment of injuries; b. Physical injury, both temporary and permanent; c. Economic damages; d. Severe and significant emotional distress and mental pain and suffering; e. Humiliation, embarrassment and fear; f. Loss of enjoyment of life; g. Annoyance and inconvenience; and h. Other damages, which, under the law and circumstances, Plaintiffs are entitled to recover, including attorneys' fees and costs associated with the prosecution of this action").
On March 25, 2019, DuPont filed its Motion for a Rule 35 Medical Exam, requesting the Court to order Mrs. Swartz to submit to "an independent mental examination." (Def's Mot. for IME at 1, ECF No. 19.) That motion is ripe for review.
II.
Rule 35 of the Federal Rules of Civil Procedure provides that a court "may order a party whose mental or physical condition ... is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." Fed. R. Civ. P. 35(a)(1). Such an order "may be made only on motion for good cause and *672 on notice to all parties and the person to be examined." Fed. R. Civ. P. 35(a)(2)(A).
The United States Supreme Court explained that, unlike the rules pertaining to the permissible scope of other forms of discovery such as interrogatories and production of documents-which require only that the information sought be "relevant to the subject matter involved in the pending action," and that discovery devices not be used in bad faith so as to cause undue "annoyance, embarrassment, or oppression,"- Rule 35 contains a "restriction" that the matter be "in controversy," and also requires that the movant affirmatively demonstrate "good cause." Schlagenhauf v. Holder , 379 U.S. 104, 117, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964) (citing Fed. R. Civ. P. 26(b) and 30(b) ). The Schlagenhauf Court went on to state that the requirements of Rule 35 are "not a mere formality," and "are not met by mere conclusory allegations of the pleadings -- nor by mere relevance to the case," but rather "require an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination." Id. at 118, 85 S.Ct. 234. The Court directed that Rule 35 "requires discriminating application by the trial judge, who must decide ... whether the party requesting a mental or physical examination or examinations has adequately demonstrated the existence of the Rule's requirements of "in controversy" and "good cause," which requirements ... are necessarily related." Id. at 118-19, 85 S.Ct. 234.
The "good cause" and "in controversy" requirements of Rule 35 make it clear that "sweeping examinations of a party who has not affirmatively put into issue his own mental or physical condition are not to be automatically ordered merely because the person has been involved in an accident - or, as in [ Schlagenhauf ], two accidents -- and a general charge of negligence is lodged." Id. at 121, 85 S.Ct. 234. "To hold otherwise would mean that such examinations could be ordered routinely in automobile accident cases." Id. , 379 U.S. at 121-22, 85 S.Ct. 234.
III.
DuPont moves this Court to order Mrs. Swartz to submit to a mental examination by a physician and professor of psychiatry to "evaluate the scope, severity, cause, extent of injury, and prognosis for Mrs. Swartz's claimed anxiety, fear, and mental and emotional distress." (Def's Mot. for IME at 4.) DuPont seeks to offer expert testimony from this physician/professor, arguing that the allegations set forth in Mrs. Swartz's Amended Complaint, "put her mental condition in controversy and good cause exists for an independent mental examination under Rule 35." Id. DuPont further contends that, "in the three prior trials that have gone to a jury in the C8 MDL, the only compensatory damage claim the plaintiff's lawyers have submitted to the jury is a claim for emotional distress." Id.
Mrs. Swartz disagrees, arguing that DuPont has failed to make an affirmative showing that she placed her mental condition in controversy, or that it has shown good cause for the requested mental examination.
A. In Controversy
While the Sixth Circuit has not spoken on this exact issue, several sister district courts have, with one recently explaining that " '[t]he majority of courts have held that plaintiffs do not place their mental condition in controversy merely by claiming damages for mental anguish or 'garden variety' emotional distress.' "
*673 T.C. ex rel. S.C. v. Metro. Gov't of Nashville & Davidson Cty. , 2018 U.S. Dist. LEXIS 113517, *33-34, 106 Fed. R. Evid. Serv. (Callaghan) 1060, 2018 WL 3348728, *8 (M.D. Tenn. July 9, 2018) (citing Santifer v. Inergy Auto. Sys. , LLC, No. 5:15-CV-11486, 2016 U.S. Dist. LEXIS 45493, 2016 WL 1305221, at *2 (E.D. Mich. Apr. 4, 2016) ; Gaines-Hanna v. Farmington Pub. Sch. , No. 04-CV-74910-DT, 2006 U.S. Dist. LEXIS 21506, 2006 WL 932074, at *8 (E.D. Mich. Apr. 7, 2006) ) (additional citations omitted). The majority of courts, including numerous district courts in the Sixth Circuit, determine whether the claimed emotional distress is "garden variety" by evaluating whether any of the following factors exist in the case:
(1) a tort claim is asserted for intentional infliction or negligent infliction of emotional distress; (2) an allegation of a specific mental or psychiatric injury or disorder is made; (3) a claim of unusually severe emotional distress is made; (4) plaintiff intends to offer expert testimony in support of a claim for emotional distress damages; and/or (5) plaintiff concedes that her mental health condition is in controversy within the meaning of Rule 35.
Id. (quoting Stevenson v. Stanley Bostitch , Inc., 201 F.R.D. 551, 554 (N.D. Ga. 2001) ) (additional citations omitted).
Mrs. Swartz argues that because none of these factors are present in her case, DuPont cannot show that she has placed her mental condition in controversy within the meaning of Rule 35. This Court agrees.
1. Intentional or Negligent Infliction of Emotional Distress
Mrs. Swartz does not bring a claim for intentional or negligent infliction of emotional distress. See Beightler v. SunTrust Banks, Inc. , 2008 WL 1984508, at *2-3, 2008 U.S. Dist. LEXIS 36039, at *7-8 (W.D. Tenn. Apr. 30, 2008) (granting IME when the plaintiff brought a claim for intentional infliction of emotional distress). But see Norman v. City of Lorain, Ohio, 1:04 CV 913, 2006 WL 5249724, at *2-3 (N.D. Ohio Nov. 16, 2006) (finding that the plaintiff had not placed his mental condition in controversy regardless of the fact that he filed a claim for intentional infliction of emotional distress).
2. Allegation of a Specific Mental or Psychiatric Injury
As DuPont points out, the United States Supreme Court has stated that "[a] plaintiff in a negligence action who asserts mental or physical injury places that mental or physical injury clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury." Schlagenhauf , 379 U.S. 104, 119, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964). DuPont argues that Mrs. Swartz has asserted a "mental injury" with her allegations of emotional distress, relying on Jansen v. Packaging Corp. of Am. , 158 F.R.D. 409 *, 66 Fair Empl. Prac. Cas. (BNA) 556 (N.D. Ill. 1994). This Court disagrees.
While Jansen does apparently equate an allegation of emotional distress with the term "mental injury," used in Schlagenhauf , the case is materially distinguishable from cases such as the one sub judice because the emotional distress alleged in Jansen was the primary injury. Mrs. Swartz, however, does not claim emotional distress as her primary injury. Instead she alleges that her "emotional and mental stress" is "associated" with the "physical ill[ness]" and "physical harm," that is, her kidney cancer. (Am. Compl. ¶ 52, ECF No. 15.) The plaintiff in Jansen , as do plaintiffs in most employment discrimination cases, claimed emotional distress as the primary injury - there was no claim for physical illness or physical injury from which the emotional distress stemmed. Jansen , 158 F.R.D. at *409-10 (the defendant sought *674 "leave to obtain a psychological examination of [the plaintiff] in her employment discrimination case .... because she says that she has suffered and continues to suffer ongoing emotional distress due to alleged sexual harassment and retaliation by her former supervisor."). See also, Green v. Michigan Dept. of Nat. Resources, CIV A 08-14316, 2009 WL 1883532 (E.D. Mich. June 30, 2009) (allowing IME for "severe emotional distress" in race discrimination case); Sultan v. Roush Indus. , No. 08-11002, 2008 WL 5188818, at *1, 2008 U.S. Dist. LEXIS 100469, at *2 (E.D. Mich. Dec. 10, 2008) (granting IME for primary injury of emotional distress in employment discrimination case); Gaines-Hanna v. Farmington Pub. Schs , 2006 U.S. Dist. LEXIS 21506 *, 69 Fed. R. Evid. Serv. (Callaghan) 1025 (E.D. Mich. 2006) (allowing IME "[s]ince Plaintiff did not sustain a physical injury, the logical conclusion is that Plaintiff's non-economic damages are based upon alleged emotional distress-type damages."). But see, Curtis v. Express, Inc. , 868 F. Supp. 467 *, 31 Fed. R. Serv. 3d (Callaghan) 109, 66 Fair Empl. Prac. Cas. (BNA) 449 (N.D. N.Y. 1994) (in an employment discrimination case, where emotional distress was the primary injury, the court denied an IME, holding: "[T]his court finds that in the absence of a separate tort claim for emotional distress, and given the fact that plaintiff only presents a claim for past mental suffering, there is no basis for a Rule 35(a) order requiring a mental examination.").
Additionally, cases outside the employment discrimination context also tend to allow Rule 35 mental examinations when there is no physical injury claimed, and the primary claim is emotional distress. See e.g., Kuslick v. Roszczewski , 2012 U.S. Dist. LEXIS 35720, 2012 WL 899355 (E.D. Mich. Mar. 16, 2012). In Kuslick , a warrant was issued for the plaintiff that she claimed "was false and erroneously furnished to provide probable cause for the warrant and Plaintiffs later arrest, detention, and prosecution." Id. at *1, 2012 U.S. Dist. LEXIS 35720, at *1. The plaintiff claimed no physical injury. The court opined that, "Plaintiff, however, has not merely submitted 'garden variety' emotional distress claims, because a review of the pleadings demonstrates that Plaintiff's primary damages claims are for emotional harm caused by the incident." Id. at *4, 2012 U.S. Dist. LEXIS 35720, at *10 (emphasis added).
DuPont is mistaken in its contention set forth supra, that "the only compensatory damages claim the plaintiff's lawyer submitted to the jury was a claim for emotional distress." (Def's Mot. for IME at 3.) Mrs. Swartz alleges, as did the other plaintiffs in this MDL, that her physical injury-kidney cancer-was caused by drinking water that DuPont contaminated with C8. She alleges, as did the other plaintiffs, that her emotional distress stemmed from her physical injury cancer diagnosis, treatment, and monitoring and those which relate to her fear of recurrence from the same.
Contrary to DuPont's assertion, in the last two trials that went to verdict, the trials of Messrs. Freeman and Vigneron, the Court gave the following final instructions to the jury with regard to damages for their physical injury (cancer ) and the pain and suffering that injury caused:
COMPENSATORY DAMAGES
If you rind for [Plaintiff] on his negligence claim, you will decide by the greater weight of the evidence an amount of money that will reasonably compensate the plaintiff for the actual injury proximately caused by DuPont's negligence. In deciding this amount, you will consider;
(1) the nature and extent of the injury;
*675 (2) the effect upon physical health;
(3) the pain and suffering experienced;
(4) the ability or inability to perform usual activities.
With regard to pain and suffering, you may consider whether [Plaintiff] has shown by the greater weight of the evidence that he suffered from emotional distress or mental anguish related to his cancer diagnosis and the operation removing his cancerous testicle, and/or that he suffered any mental anxiety over contracting cancer in the future. This latter form of pain and suffering has been referred to throughout this trial as cancerphobia. To recover for cancerphobia, [Plaintiff] must have established by the greater weight of the evidence that he is aware that he in fact possesses an increased statistical likelihood of developing cancer, and that from this knowledge springs a reasonable apprehension which manifests itself in emotional distress. It is for you to decide whether [Plaintiff]'s claimed apprehension or fear of developing cancer is reasonable.
From these you will determine what sum will compensate the plaintiff for the injury to date. In this case, you may not consider lost wages, salaries, or other compensation when determining damages because [Plaintiff] has not asserted a claim for those types of damages. Nor may you consider the cost of any future medical care [Plaintiff] may require because [Plaintiff] has not made a claim for those types of damages.
(Freeman v. E.I. du Pont de Nemours and Company , Case No. Case No. 2:13-cv-1103, ECF No. 102 at 26; Vigneron v. E.I. du Pont de Nemours and Company, Case No. Case No. 2:13-cv-136, ECF No. 195 at 26).
Further, in cases similar to the instant action, the majority of courts find, that "[t]o put his mental condition in controversy, a plaintiff must assert a claim of mental or psychiatric injury." Turner v. Imperial Stores , 161 F.R.D. 89, 94 (S.D. Cal. 1995). And, the Turner court explained that emotional distress is not the same as mental injury:
This court concludes that "emotional distress" is not synonymous with the term "mental injury" as used by the Supreme Court in Schlagenhauf v. Holder for purposes of ordering a mental examination of a party under Rule 35(a), and specifically disagrees with those few cases holding that a claim for damages for emotional distress, without more, is sufficient to put mental condition "in controversy" within the meaning of the Rule. If this were the law, then mental examinations could be ordered whenever a plaintiff claimed emotional distress or mental anguish. Rule 35(a) was not meant to be applied in so broad a fashion
Id. at 97.
The majority of courts agree with this proposition. See Tomlin v. Holecek , 150 F.R.D. 628, 630 (D. Minn. 1993) ("As used in [ Rule 35 ], the term 'mental' refers to 'mental disorders and psychiatric aberrations.' ... To put his mental condition in controversy, a plaintiff must assert a claim of mental or psychiatric injury.") (internal citations omitted); Cody v. Marriott Corp. , 103 F.R.D. 421, 423 (D. Mass. 1984) ("this Court hereby DENIES without prejudice the defendants' motion. If, however, at some later date the plaintiff utilizes the services of a psychiatrist or psychologist for use at trial, the defendants may be allowed to conduct a Rule 35(a) examination."). The Turner court went on to provide as an example Shepherd v. American Broadcasting Companies, Inc. , 151 F.R.D. 194 (D.D.C.1993) where "the plaintiffs had consulted a doctor about her emotional problems, and had offered the full text of the doctor's deposition in support of her *676 claim that as a result of defendants' actions, she suffered from 'Post-Traumatic Stress Disorder /Syndrome .' " Id. at 94 (emphasis added) (citing Shepherd , 151 F.R.D. at 213 ("The Shepherd court concluded, 'By these actions, plaintiffs have placed the existence and extent of their alleged mental injuries in controversy.' "). See also Hearring v. Sliwowski , No. 3:10-0746, 2011 WL 3897803 (M.D. Tenn. Sept. 6, 2011) (ordering Rule 35 mental exam where plaintiff alleged "grievous mental suffering, including but not limited to post-traumatic stress disorder"); Roberson v. Bair , 242 F.R.D. 130, 137 (D.D.C. 2007) (allowing ME because the plaintiff "unquestionably claims that she is suffering from two identifiable forms of mental illness or disorder and that those conditions were caused by Defendant.");
Mrs. Swartz has not alleged "a specific mental or psychiatric injury," and instead alleges only pain and suffering as a result of her physical cancer diagnosis, treatment, and monitoring.
3. A Claim of Unusually Severe Emotional Distress
The third factor the majority of courts utilize to determine whether the claimed emotional distress is "garden variety" is whether the emotional distress is unusually severe. Some courts make this determination by comparing the plaintiff's emotional distress with "the emotional distress which frequently accompanies" the type of physical injury at issue. Anson v. Fickel , 110 F.R.D. 184 (N.D. Ind. 1986). In Anson , the plaintiff alleged that he had been required to seek psychiatric treatment, and that his treatment had required him to be confined in a psychiatric ward as a result of a traffic accident. Id. (finding that "it must be assumed that the plaintiff was experiencing problems which were more severe than the emotional distress which frequently accompanies personal injuries." Id. at 186 ).
Similarly, in Tomlin v. Holecek , 150 F.R.D. 628 (D. Minn. 1993) the plaintiff alleged that his emotional distress was unusually severe, manifesting itself through sexual dysfunction. Id. at 629 (the plaintiff alleged that he had suffered "severe and permanent physical and emotional injuries," was treated by two psychologists, both of whom would testify at trial concerning the "psychological insult" that plaintiff suffered as a result of the incident which had manifested itself through sexual dysfunction).
Courts have also found that a plaintiff's emotional distress was severe or extraordinary when physical injury resulted from the emotional suffering. See e.g., Green v. Mich. Dep't of Natural Res. , 2009 U.S. Dist. LEXIS 55458 *, 2009 WL 1883532 (E.D. Mich. June 30, 2009) ("Plaintiff alleges unusually severe emotional distress by specifying the 'physical manifestations of' his emotion distress, mental anguish, depression, loss of reputation, humiliation and embarrassment."); Rose v. Cahee , 2009 U.S. Dist. LEXIS 111107, 2009 WL 3756985 (E.D. Wisc. Nov. 9, 2009) (the plaintiff alleged, inter alia, that her emotional distress was so severe that it required "an increase in her [HIV] medications").
Here, Mrs. Swartz claims no physical injury resulting from her emotional distress, nor any emotional distress that does not frequently accompany a diagnosis of cancer.
4. Intention to Offer Expert Testimony in Support of a Claim for Emotional Distress Damages
Courts find it more likely that emotional distress claims are not garden variety when the plaintiff offers expert testimony to support her claim for emotional distress damages. See Womack v. Stevens Transport, 205 F.R.D. 445, 447 (E.D. Pa. 2001)
*677 ("A[n] ... IME would be relevant in this case because without it, the Defendant's defense would be limited to the mere cross-examining of evaluations offered by Plaintiffs experts."); Gaines-Hanna v. Farmington Pub. Schs , 2006 U.S. Dist. LEXIS 21506 *35, 69 Fed. R. Evid. Serv. (Callaghan) 1025 (E.D. Mich. 2006) ("plaintiff will be offering medical expert testimony in support of her case").
Mrs. Swartz, like the four plaintiffs in the trials before her, will not offer any expert testimony on her claim of emotional distress.
5. Concession that Mental Health Condition is in Controversy within the Meaning of Rule 35
Of course, when a plaintiff concedes that her mental health is in controversy within the meaning of Rule 35, this Court would not hesitate to permit a Rule 35 IME. See e.g., Young v. City of Cambridge, 2010 U.S. Dist. LEXIS 19918 *2-3, 2010 WL 546361 *1 (S.D. Ohio Feb. 10, 2010) ("Mr. Young does not dispute that by filing his complaint alleging personal injuries and seeking damages for them, he placed his physical condition in controversy. However, he argues that there is no good cause for the defendants to have him examined by a physician of their choice."); Peters v. Nelson, 153 F.R.D. 635, 638 (N.D. Iowa 1994) ("Peters has asserted such claims in the present action and concedes that her mental condition is "in controversy" in the present matter.").
Mrs. Swartz does not concede that her mental condition is in controversy within the meaning of Rule 35.
6. Conclusion - In Controversy
As shown above, none of the factors courts utilize to determine whether the claimed emotional distress is "garden variety" are present in this case. Further, the Court finds that there are no other facts or circumstances present in this case that would cause this Court to find that Mrs. Swartz's emotional distress allegations are anything more than those that any individual diagnosed with cancer would claim. Accordingly, the Court concludes that DuPont has failed to affirmatively show that Mrs. Swartz's mental condition "is really and genuinely in controversy," as required by Rule 35. Schlagenhauf , 379 U.S. at 118, 85 S.Ct. 234.
B. Good Cause
With regard to the movant's burden to show good cause to require a party to submit to a Rule 35 IME, this Court has explained:
The "good cause" requirement is satisfied, in part, by a showing that the requested information cannot be obtained by other means. [ Schlagenhauf , 379 U.S. at 118, 85 S.Ct. 234 ]; Marroni v. Matey , 82 F.R.D. 371, 372 (E.D. Pa. 1979). It also appears to require a showing that, in a particular case, there is some reason for the examination other than the fact that a party's mental or physical condition is at issue, such as a reasonably-based belief that the examination will reveal information about that condition which is adverse to conclusions reached by other examining physicians. See, e.g., Anson v. Fickel , 110 F.R.D. 184 (N.D. Ind. 1986). Otherwise, the Court would routinely grant a Rule 35 request in any case where a party claimed any physical or psychological injury, a result seemingly inconsistent with Schlagenhauf's requirement that the Court make a "discriminating application " of Rule 35.
Young v. City of Cambridge , 2010 U.S. Dist. LEXIS 19918 *3-4, 2010 WL 546361 *1 (S.D. Ohio Feb. 10, 2010) (emphasis added).
*678 With regard to good cause, DuPont argues:
Plaintiffs Opposition treats the "in controversy" and "good cause" requirements of Rule 35 as wholly independent, but these two parts of Rule 35 are "necessarily related," and one rarely exists independent of the other. See Schlagenhauf , 379 U.S. at 119, 85 S.Ct. 234. In personal injury tort cases claiming negligence, where, like here, a mental condition is "in controversy", "good cause" naturally exists because the defendant has the right to independently examine the plaintiff's mental state to defend against the plaintiff's claims. See, e.g., Ali v. Wang Labs., Inc. , 162 F.R.D. 165, (M.D. Fla. 1995) ("Since plaintiff's mental condition is in controversy and substantial damages are asserted, it is essential for defendant to have the reasonable opportunity to challenge plaintiff's claim and testimony. The testimony of an expert is a well recognized and reasonable way of doing so, and an examination of plaintiff by that expert is necessary for the expert to form a meaningful opinion."); Duncan v. Upjohn Co. , 155 F.R.D. 23, 25 (D. Conn. 1994) ("By claiming ongoing psychiatric harm caused by the negligence of the defendant, therefore, the plaintiff has placed his mental state in controversy, which in turn constitutes good cause for ordering a psychiatric examination. ..."); Large v. Our Lady of Mercy Medical Center, 1998 WL 65995, at *6, 1998 U.S. Dist. LEXIS 1702, at *16 (S.D.N.Y. 1998) (finding that it is "usually the case" that good cause exists "where a party has placed her mental condition in controversy").
(Def's Reply at 9-10.)
DuPont's argument, however, presupposes that Mrs. Swartz has placed her mental condition in controversy, which she has not done.
Nevertheless, assuming arguendo DuPont had shown that Mrs. Swartz placed her mental condition in controversy, as this Court stated in Young, the good cause requirement still requires "a showing that the requested information cannot be obtained by other means.... and that there is some reason for the examination other than the fact that a party's mental or physical condition is at issue." Young, 2010 WL 546361 *1, 2010 U.S. Dist. LEXIS 19918 *3. DuPont has failed to show either.
DuPont has not even suggested that there is some reason for the examination other than the contention that Mrs. Swartz has placed her mental condition is at issue, such as "a reasonably-based belief that the examination will reveal information about that condition which is adverse to conclusions reached by other examining physicians." See, e.g., Hanna v. Fresno County , 2015 U.S. Dist. LEXIS 159569 *13, 2015 WL 7458691 *4 (E.D. Cal. November 24, 2015) (defendants had a reasonably-based belief that the examination will reveal information about that condition which is adverse to conclusions reached by other examining physicians because "Plaintiff admitted malingering to his treating physicians and manufacturing symptoms, his treating and examining physicians are not in agreement regarding the diagnosis and nature of Plaintiff's condition"). In Hanna , the plaintiff prisoner "alleges that his psychiatric problems, including bipolar disorder, require medication. Because he was not provided psychotropic medication in jail, Plaintiff alleges he suffered a 'recurrence of suicidality' " which resulted in three serious suicide attempts, the last resulting in "anoxic brain damage, causing him permanent and severe physical and mental disabilities requiring total care for all his daily needs for the rest of his life." Id. at *1, 3, 2015 U.S. Dist. LEXIS 159569, at *2-3, 10. The Hanna court explained that, not only was the plaintiff's mental *679 condition in controversy, and the plaintiff planned to call numerous treating physicians and psychiatrists, but that there was evidence in the record that the prisoner "had been pretending his mental injuries and memory loss." Id. at 3, 2015 U.S. Dist. LEXIS 159569, at 10. Thus, unlike the instant action, there was "some reason for the examination other than the fact that a party's mental or physical condition is at issue," namely, a reasonably-based belief that the examination would reveal information about the plaintiff's condition which is adverse to conclusions reached by other examining physicians.
With regard to the ability to obtain the information by other means, DuPont offers no argument as to why it cannot obtain the information it seeks from other means. Instead, DuPont merely states that "Plaintiff is wrong in arguing, without reference to any on-point authority, that DuPont does not have 'good cause' for an IME because DuPont has sought information related to the Plaintiff's mental state through other means of discovery, including Plaintiff's deposition." (Def's Reply at 10.) However, even if Plaintiff is incorrect that obtaining the information through discovery does not suffice to show that the information can be obtained through another means - that does nothing to help DuPont make its affirmative showing that it cannot obtain the information from some other source.
Accordingly, DuPont has failed to meet its burden to "affirmatively demonstrate good cause" to be permitted to subject Mrs. Swartz to a Rule 35 mental examination. Schlagenhauf v. Holder , 379 U.S. at 117, 85 S.Ct. 234.
IV.
Based on the foregoing, the Court DENIES Defendant's Motion to Permit the Rule 35 Medical Examination of Plaintiff Angela Swartz. (ECF No. 19.)
IT IS SO ORDERED.

In February 2017, the parties globally settled over 3,500 cases that were then pending in this MDL. Since then, there have been approximately 50 cases filed.